## William J. Sloan v. The People of the State of Illinois.
### Daniel Thompson v. Same.
#### Gen. Nos. 11,367 and 11,428.

1. CONTEMPT—*when rule to show cause properly entered.* The bill in a case being in due form, the court having jurisdiction, and a petition asking a rule to show cause being on file which shows *prima facie* a violation of an injunction in the cause, it is proper for the court to enter such rule.

2. CONTEMPT—*when answer does not authorize discharge for.* The mere fact that the defendants have filed a verified answer denying the charge of contempt, does not require a discharge of the rule.

3. CONTEMPT—*when respondent sufficiently apprised of charge of.* Under a charge of violating an injunctional order, a respondent may be convicted of aiding and abetting others in such violation, as the former charge includes the latter.

4. CONTEMPT—*when respondent not entitled to discharge.* Notwithstanding the defendants to a cause are discharged from the rule to show cause, yet others who were required to respond to such rule to show

Sloan v. The People.

why they should not be attached for aiding and abetting such defendants in violating such injunction, need not necessarily be discharged, and, if guilty, may be punished.

5. SURRENDER BY SURETIES—*scope of statute pertaining to.* The sections of the criminal code which pertain to the surrender by sureties of persons charged with criminal offenses, pertain only to criminal actions and have no application to contempt proceedings.

Contempt proceedings. Appeals from the Superior Court of Cook County; the Hon. JESSE HOLDOM, Judge, presiding. Heard in this court at the October term, 1903. Affirmed. Opinion filed June 30, 1904.

Statement by the Court. These appeals are by agreement consolidated for purposes of hearing, the certificate of evidence in No. 11,367 being considered in No. 11,428, and only one set of abstracts and briefs for the respective parties being filed in the two cases.

The People's Gas Light & Coke Co. on the 15th day of April, 1903, filed its bill for an injunction and for general relief against John J. Fitzpatrick, John J. Laverty and others, naming them, which contains the following prayer, to wit:

"That the persons above named be made parties defendant and may be required to answer the bill, but not under oath; that a preliminary writ of injunction may issue forthwith restraining the defendants and each of them by name, their agents, servants, employees, aiders, abettors and coconspirators, and all other persons acting by, through or under them, or for them, whether expressly or not, and all other persons, from picketing the works and plants of complainant, and from intimidating by word or deed the employees of complainant from continuing in the service of the complainant, and from threatening the employees of the complainant if they shall continue in the service of your orator, with bodily violence or otherwise, and from creating violence in and about the plants and works of your orator in the city of Chicago, and from preventing by threats, intimidation or otherwise, restaurant keepers and others, purveyors of food supplies, from selling to your orator such food supplies as it may desire to purchase, and from in any wise interfering with your orator, or with the workmen of complainant in carrying on their business, and that the said John J. Fitzpatrick, John J. Laverty, John Mulloy, Miles Callaghan, William Callaghan, A. A. Weessling, Timothy

Mahoney, Frank O'Keefe and Paul Schultz, cease and desist from all efforts intended or calculated to compel or coerce the employes of your orator from entering into a union or association, against their will, at the request, direction or coercion of the said John J. Fitzpatrick, John J. Laverty, John Mulloy, Miles Callaghan, William Callaghan, A. A. Weessling, Timothy Mahoney, Frank O'Keefe and Paul Schultz, or any or either of them, and that upon final hearing such injunction may be made perpetual, and that your orator may have such other and further relief in the premises as to equity may seem meet; that a writ of injunction issue directed to each of said defendants enjoining them and all other persons associated with them in committing said grievances; that each of them absolutely desist from picketing the works of complainant and from intimidating by word or deed the employes of your orator from continuing in the service of the complainant, and from threatening said employees with bodily violence or otherwise, and from creating violence in and about the plants aforesaid, from preventing or attempting to prevent by threats, intimidation or otherwise, restaurant keepers and other purveyors of food supplies from delivering to the complainant food supplies and from in any wise interfering with complainant or with its employees in carrying on their several duties, and that said defendants cease and desist from all threats by them intended to intimidate the employees of complainant into entering into any union or association at the request of said defendants or either of them."

A writ of injunction issued according to the prayer of the bill, and thereafter, on April 20, 1903, the gas company filed a petition in said cause, sworn to by Wiley, the secretary of the company, for an attachment against the defendants and many others, naming them, which states in substance that complainant gave notice of the order of injunction in the widest possible way to all persons concerned, specifying the manner in which the notice was given; that the injunction had been violated, setting up the manner in which it had been violated by different defendants to the bill, including said Laverty and other persons not defendants to the bill, naming them, including the appellants and one Arthur Albrow, and that the specific acts of violation

of said injunction and by whom committed were set forth
in the affidavits of certain persons, naming them, and others
filed with the petition and in support thereof. The peti-
tion prays an order that the different persons named in it
as having been guilty of violating the injunction be at-
tached and punished therefor.

The different defendants named in the petition as having
violated the injunction, as well as the appellants and others,
having been ruled to show cause why they should not be
attached and punished, answered the petition under oath,
denying specifically all its allegations concerning each of
them respectively. A hearing was had before the chan-
cellor, upon the petition and answers thereto and affidavits
in support of each respectively, and the affidavit of one
Murray in support of the petition by way of rebuttal. On
May 1, 1903, the court, "on recommendation and motion
of counsel for complainant," ordered that all the defend-
ants to the bill, except said Laverty, who were ruled to
show cause why they should not be attached and punished,
be discharged from said rule, and again on May 4, 1903, by
a separate order, also discharged from the said rule the said
Laverty. On the same day the court entered a separate
order finding that the appellants and the said Albrow had
failed to show cause as ruled, that they each had "knowingly
and wilfully aided and abetted the defendants in the above
entitled cause, or some of them, in disobeying and violat-
ing" the said injunction, and setting up in detail wherein
they each were guilty, and directing that said Sloan be
committed to the county jail of Cook county for ten days,
said Thompson for fourteen days, and said Albrow for seven
days. They each prayed an appeal to this court, which
was granted upon the filing of a bond by each of them in
a penalty specified, with surety to be approved by the
court. Appellants each gave an appeal bond, which was
approved by the court May 5, 1903, but the following day
the surety on each of the bonds surrendered the bodies
of appellants, and the court ordered the sheriff to take pos-
session of their bodies as directed by the order of said

May 4; that writs of commitment issue for that purpose, and that the surety on the appeal bonds be discharged from further liability. May 11, 1903, appellants gave other appeal bonds with another surety, which were approved by the court, and appellants were ordered discharged from further imprisonment under said order of May 4. To review said order of May 4 these appeals are prosecuted.

E. R. Eldridge and C. C. Clark, for appellants.

Sears, Meagher & Whitney, for appellee.

Mr. Justice Windes delivered the opinion of the court.

No question is made as to the sufficiency of the bill to sustain nor as to the scope of the order of injunction.

Appellants claim that the court erred in entering a rule against them to show cause why they should not be attached and punished, as set out in the statement, but we are of opinion the petition, the substance of which is stated, being sworn to, was sufficient to justify the court in entering the rule. Oster v. The People, 192 Ill. 473–8.

It is also contended that the court erred in not allowing a motion made by appellants on the filing of their sworn answers, respectively, to discharge them upon said answers, for the reason that the proceeding is criminal. A similar question was fully considered by this court in the cases of Christensen, and others, v. People, etc., 114 Ill. App. 40, and determined against the claim here made. There is nothing in the argument in these cases that changes our views there expressed.

It is also said that the court erred in permitting the surety on appellants' first appeal bonds, approved May 5, 1903, to surrender them, and in then ordering appellants into the custody of the sheriff. Counsel cite in support of this contention sections 485, 488 and 489 of the Criminal Code, which all relate to the surrender of persons charged with criminal offenses by their sureties, and have no application to a case of this kind, which we held in the Christensen case to be a civil proceeding, though it is criminal in its nature.

Moreover, these appeals are from the order of May 4 only, and this order being made subsequent thereto cannot be reviewed on these appeals.

A further claim is made that appellants are not found guilty and punished for violating the injunction, as was prayed in the petition for the rule against them to show cause, but for a different offense, viz., that of aiding and abetting the defendants in the cause, or some of them, in disobeying and violating the injunction. If the latter is a distinct offense from the former, we think the second offense is included in the former. In any event the chancellor distinguished between the defendants and the other parties, not defendants, including the appellants, named in the petition and charged with having violated the injunction, and the order to show cause against appellants is not the same as in the rule against the defendants, but for the same matter for which they were punished and to which their answers to the rule were directed. We are also of opinion that appellants were fully apprised by the petition and affidavits in support thereof of the charges made against them, and that, under the Oster case, *supra*, was sufficient as a basis for the process of attachment against them.

The principal and only remaining question is, however, closely allied to the one last mentioned, and is whether the court erred in finding, under the evidence, that appellants did not show cause in answer to the rule, and in punishing them for aiding and abetting the defendants, or some of them, in violating the injunction, when all of the defendants charged with its violation were discharged. Especial reliance is put by appellants' counsel on Parsons v. The People, 51 Ill. App. 467, in which it was held, Mr. Justice Gary delivering the opinion, that the appellant, who was guilty, if at all, of aiding and abetting certain directors of a corporation in the violation of an injunction, could not consistently be punished for violating the injunction when the directors were not punished, since they directed the very act for which the appellant was punished. The decision was, however, placed upon a higher ground, viz., that

the appellant in doing what she did, in good faith acted upon the advice of a reputable attorney, that in doing the act with which she was charged, she would not violate the injunction. We think the case is clearly distinguishable from the one at bar, and should not control.

In view of the conclusion reached we think it is not necessary that any of the defendants should have been found guilty of violating the injunction before the appellants could be held guilty and punished, as they were in this case, for aiding and abetting the defendants in violating the injunction. It is well settled that a person who knowingly disobeys an injunction, whether a party to the cause in which the injunction is issued or not, may be punished for such violation, and where any one is included within a class that is by the terms of the injunction enjoined, then he is in effect a party to the cause—at least in the same situation as a party, so far as concerns a violation of the order, when he is informed of the injunction. The injunction in this case is according to the prayer of the bill, and runs against the defendants and each of them by name, " their agents, servants, employees, aiders, abettors and co-conspirators, and all other persons acting by, through or under them, or for them, whether expressly or not, and all other persons." The appellants, knowing of the injunction and acting for the defendant Laverty, if not for others of the defendants, as we think a preponderance of the evidence shows, are clearly within some of the classes named, to wit, aiders, abettors and other persons acting under the defendants or for them. In a late case, Seaward v. Paterson, 66 L. J. (N. S.) 267, the English Chancery Court of Appeals held, following the case of Wellesley v. Mornington, 11 Beav. 180, that a person who knowingly aids and assists in the doing of acts which have been expressly prohibited by injunction, although he is not a party to the litigation nor named in the order granting the injunction, may be committed for contempt of court. The court (North, J.) says: " It is clear that an injunction restraining a man, his servants and agents, is a common recognized form, and one that can be

enforced against those servants and agents, although they are not parties to the action, but outsiders; and, in my opinion, any person who deliberately assists another person in committing a breach of the injunction can be punished for his contempt of court in taking part in the commission of such act." The holding of the court was affirmed by the House of Lords, where the case seems to have been carefully considered, and the court say, speaking of the appellant: "He was not bound by the injunction any more than anybody else, but he was bound like anybody else not to interfere with or obstruct the course of justice. The case against him must be, not that he technically infringed the injunction, but that he has been aiding and abetting the defendant in infringing it;" and held that inasmuch as the appellant, as the court expressed it, "was at the bottom of the whole thing," he was properly punished as for contempt in aiding and abetting in the violation of the injunction.

In the Wellesley case, referred to, it was held that although a person not a party to the record was not enjoined in his character as servant and agent, he could be punished for knowingly aiding and assisting the defendant in doing what was prohibited by the injunction. In neither of these cases were the defendants punished. Such in effect was the holding of the Supreme Court of Tennessee in Underwood's case, 2 Humph. 45, and of the federal courts in Conkey v. Russell, 111 Fed. Rep. 417–22; *Ex parte* Lennon, 166 U. S. 548–54; *Ex parte* Richards, 117 Fed. Rep. 658–65, and *In re* Reese, 107 Fed. Rep. 942–45. In the Reese case the U. S. Circuit Court of Appeals said : " The power to punish for contempt is not limited to cases of disobedience by parties to the suit of some express command or rule against them, but, subject to the limitations imposed by section 725, *supra* (referring to the Act of Congress with regard to imprisonment for contempts by federal courts), is co-extensive with the necessity for maintaining the authority and dignity of the court " (citing numerous cases, among others the Seaward and Wellesley cases, *supra*), but held that

Reese was properly discharged on *habeas corpus* from a contempt commitment, he having been charged with and found guilty of violating the terms of an injunction order. He was not a party to the cause by name or representation, and there was nothing in the petition for the rule; the order against him to show cause, or the commitment, which remotely suggested the purpose of the court to punish him for a wilful resistance or disregard of the court's authority or for interfering with or obstructing the course of justice, otherwise than in violating the express order of the court. It seems clear that had Reese been in the position of these appellants he would have been held for contempt. In the Lennon case the Supreme Court of the United States, in speaking of the liability of a person not a party to the suit for violating an injunction therein, say: "To render a person amenable to an injunction it is neither necessary that he should have been a party to the suit in which the injunction was issued, nor to have been actually served with a copy of it, so long as he appears to have had actual notice."

That the appellant Sloan violated this injunction directly, or aided and abetted the defendants in violating it, is, we think, clearly established by the preponderance of the evidence, consisting of the affidavits of Murray, Turk and Fitzpatrick. This evidence shows that he was one of a large mob of pickets and their sympathizers, numbering at least 300, and at 7:15 o'clock on the morning of April 17, 1903, near number 14 North Sheldon street, Chicago, interfered with one of complainant's metre wagons so that the driver of the wagon was stopped and prevented by Sloan and others from going about the complainant's business. Sloan, when spoken to about the injunction, in a loud voice replied, "To hell with the injunction." It is true that Sloan denies having used this language at the time in question, and in one part of his affidavit says that he first heard of the injunction on April 17, between nine and ten o'clock (presumably in the forenoon), but in the same affidavit says that he did not know of the injunction until

after he came to the court, at 125 Clark street, which is a long distance from where he was with the mob. He came to the court, as he admits, after he had been arrested by a policeman at the place where the other witnesses state that he was a member of the mob, and was notified of the injunction, which was at 7:15 A. M. We think the chancellor was justified in believing the affidavits in support of the petition as against that of Sloan.

That the appellant Thompson violated the injunction directly, or aided and abetted the defendant in violating it, is established by the affidavits of Clarence K. Wooster, the vice-president of the gas company, and Lee P. Hynes, in that, with full knowledge of the injunction, he did, on April 17, picket the works and plant of the gas company near Archer avenue and Hough place, Chicago, and by threats and intimidation prevented one Fischer, a dealer in groceries, from selling food supplies to said Hynes, who was at that time an employee and in the service of the gas company, the said food supplies being intended to be taken by Hynes to the gas company's plant, there to be used by the company; and did also intimidate said Hynes by threats and bodily violence from continuing to perform his duties as an employee of the company. It is true that Thompson denies in general terms that he did the acts or used the threatening language attributed to him by the affidavits of Wooster and Hynes, and to support his denial there were filed the affidavits of J. H. Fischer, the said groceryman, and P. T. O'Connell; but we are of opinion, from a careful reading of these affidavits in connection with Thompson's, that instead of being against, they tend to support the court's findings. In the affidavit of Hynes there is set out an occurrence at the grocery store of Fischer & Co. between Thompson and Hynes, in the presence of Fischer, in which he says that Thompson said, speaking to the proprietor of the store, whether to Fischer or his partner is not stated, "I will give you notice that you can't sell anything to him. Are you going to sell anything to him?" (referring to Hynes) and that the proprietor said (speaking

to Hynes), "I am afraid of the union and cannot sell you anything;" and that Hynes said to Thompson, "You are liable to arrest for violating the injunction, which forbids your intimidating us or threatening us with violence, or interfering with any grocers selling us food supplies," and that Thompson then said, "I don't care a damn for what the injunction says." Fischer does not deny any of the remarks above referred to attributed to Hynes nor to the proprietor on this occasion, but only says that so far as this affidavit relates to Thompson it is not true. He does not say he was not the proprietor to whom Thompson spoke. We think it may be fairly inferred, since Fischer does not profess to state what did occur, and he confines his denial only to what Thompson is claimed to have said, that the occurrence was practically as stated by Hynes.

The affidavit of O'Connell, as well as that of Thompson, in our opinion corroborates the affidavit of Hynes with regard to an occurrence between Thompson and Hynes immediately after they left the grocery store of Fischer, in which Hynes says Thompson, without any provocation, used threatening and abusive language toward him and struck him, Hynes, with great force and violence in his face, and cut his lip, and that the conductor and motorman of the car came to Hynes' assistance and put Thompson off the car. O'Connell says that "Thompson sat down by the side of Hynes, and just as he was in the act of sitting down, said Hynes, with both hands, thrust him aside, whereupon said Thompson struck said Hynes a blow on the head." He does not deny but that Thompson was put off the car by the conductor and motorman. Thompson admits in his affidavit that he went into the car and sat down by Hynes, and says that the latter put his hand on him and said "I don't want to talk to you;" also that Hynes "raised up his fist and struck affiant on the stomach in a violent and insulting manner," and that he, in self-defense, struck Hynes on the face, cutting his lip. He denies that he was put off the car by the conductor and motorman, but says that he got off the car of his own motion, though he also says

that he went into the car and sat down because it was raining and on account of the dampness of the weather. We think it is evident that when he had struck Hynes, Thompson's work was done. From a careful reading of the affidavits regarding this occurrence, in view of the matters above referred to, we are of opinion that the chancellor was justified in believing Hynes' version of it and finding that Thompson was guilty as found in the order of the court.

If strictly and technically appellants cannot be said to be guilty as aiders and abettors of the defendants, or some of them, because the defendants have not been punished, a position which we think is untenable, still we think, having notice of the injunction, and being within a class of persons included in the order of injunction, namely, persons acting under the defendants or for them, as the evidence in our opinion establishes, they are guilty of knowingly violating the court's order—disregarded its authority, and should suffer the consequences.

The order as to each of the appellants is therefore affirmed. Separate judgments will be entered in each of the appeals.

*Affirmed.*