THE PEOPLE *ex rel.* WILLIAM J. SCOTT, Attorney General, Plaintiff-Appellee, *v.* MASTER BARBERS & BEAUTY CULTURISTS ASSOCIATION *et al.*, Defendants-Appellants.

(No. 57196;

First District—January 22, 1973.

Sherman Carmell, Sheldon M. Charone, and Stuart N. Litwin, all of Chicago, (Carmell & Charone, of counsel,) for appellant Anthony Mastronardi.

William J. Scott, Attorney General, of Chicago, (Robert S. Atkins and Barry J. Schmarak, Assistant Attorneys General, of counsel,) for appellee.

Mr. JUSTICE GOLDBERG delivered the opinion of the court:

On July 11, 1969, in litigation between People of the State of Illinois, by William J. Scott, Attorney General of Illinois, (plaintiff) and Master Barbers and Beauty Culturists Association of Chicago, Inc. (Association), and certain of its officials including Philip Meli, (defendants), a consent decree for injunction was entered. This decree enjoined and restrained the Association and all of the defendants, their successors, *etc.*, and agents from participating in any undertaking for the purpose of controlling, maintaining or making uniform prices at which barbering services were offered to the public.

On December 30, 1970, plaintiff filed a petition for a rule to show cause against the Association, the said Philip Meli, Al Parello, a vice-president of the Association, and also against Anthony Mastronardi (respondent) asking that all of them be held in contempt for violation of the injunction. After full hearing, the court entered an order finding the respondent in contempt for violation of the decree and requiring him to pay a fine of $500. In the same order, the court adjudged the Association, Philip Meli and Al Parello not guilty of contempt. Respondent appealed from this order directly to the Supreme Court of Illinois, which transferred the cause to this court.

In his brief, respondent urges that because he was tried on criminal charges and acquitted for the same alleged offense involved in the contempt charge, constitutional principles preventing double jeopardy forbid further punishment; since he was not named in the injunction and he did not aid or abet any other person in violation thereof, his independent conduct does not constitute contempt; and, finally, that the proceedings denied him due process of law. Plaintiff responds with the arguments that principles against double jeopardy do not bar punishment of respondent for contempt; respondent is bound by the injunc-

tional order because he had actual knowledge thereof and acted in concert with the parties to the cause in its violation; respondent is in contempt because he violated the injunction while acting as an agent for the named parties; and, finally, that the contempt proceedings did not deny respondent due process of law.

The evidence showed that Mastronardi, a barber shop owner and also secretary of the Journeymen Barbers Union, Local 576, visited John Giovingo's barber shop in Calumet City in December of 1969 to persuade him to raise his prices. Giovingo was a member of the Association. He testified that Mastronardi returned the following day and told him that if he did not raise his prices his barber employees, members of Local 576, would be pulled out of the shop. Giovingo raised his prices.

Larry Adams, a barber shop owner, testified that in April of 1970 he reduced his prices for children and senior citizens. His only barber employee had agreed to this plan. The next day Mastronardi called him and threatened him about the price reduction. The following day, May 1, 1970, Mastronardi, with two officials of the Association, Parello and Meli, drove to Adams' shop in one car. Meli and Mastronardi tried to convince Adams not to reduce his prices. Mastronardi threatened to "mess him up." Mastronardi also told Adams that he owed 17 months dues to the Association. Adams reinstated his original prices.

In November of 1970, Adams and his new partner, Nick Reda, again decided to reduce prices. Mastronardi telephoned Adams' shop and spoke to Reda on the phone about these reductions. Reda did not come to work the next day, but two cars drove to Adams' shop and four persons got out, including Mastronardi and Meli. Mastronardi pointed at the sign in Adams' window advertising the price reduction and again threatened Adams who kept the door locked. Adams filed a criminal complaint based on this incident, but Mastronardi was acquitted.

Mastronardi admitted having knowledge of the injunction on May 1, 1970 and that he possibly knew of it in December of 1969. Mastronardi testified that the reason for his visit to Adams' shop in May of 1970 was to talk with Joel Carson. He had, however, heard a rumor that Adams had reduced his prices and considered this a violation of his contract with Local 576, since barbers' salaries are, in part, based upon a percentage of haircut prices. He claimed to have called a meeting with Parello and Meli to discuss this grievance pursuant to the terms of the contract between Local 576 and the Association. He testified that Meli and Parello attempted to reinstate Adams and that he did not participate in this, nor discuss the price increase until they had left the shop. At this time, Adams said he would reinstate the original prices.

Mastronardi testified that, in November, he again called the Associa-

tion and arranged a meeting over the last price reduction. He and his business representative arrived with representatives of the Association, but Adams locked the door and would not admit them.

The first point raised by respondent involves the question of double jeopardy. (See Ill. Const. 1970, art. I, sec. 10. Also U.S. Const. amend. V.) In the answer filed by respondent to plaintiff's petition for a rule to show cause, respondent alleged that he had been acquitted in the Criminal Division of the circuit court of Cook County on charges of assault and intimidation initiated by Larry Adams; and, consequently, that the proceedings seeking to hold him in contempt constituted double jeopardy. This contention was overruled by the trial court. Defendant's argument here is that the criminal proceedings as well as the within contempt proceedings could both have resulted in depriving him of his liberty; and, therefore, there was double jeopardy.

■■ We find this contention unavailing. In the criminal proceedings, respondent was charged with assault and also with intimidation. An assault is committed when a person "*   *   * engages in conduct which places another in reasonable apprehension of receiving a battery." (Ill. Rev. Stat. 1971, ch. 38, par. 12—1(a).) In the intimidation charge, the act in question was communication of a threat. (See Ill. Rev. Stat. 1971, ch. 38, par. 12—6.) In the proceedings at bar, all counsel agree that respondent was charged with criminal contempt, which is directed to preservation of the dignity and authority of the court. (See *People ex rel. Kazubowski v. Ray,* 48 Ill.2d 413, 416, 272 N.E.2d 225.) It is apparent from this statement that widely distinct elements were involved in the two proceedings. The component legal elements of assault or intimidation are not present in this contempt proceeding and have no materiality here. Thus, even though both proceedings may have related to the same general transaction between respondent and Adams, the conviction or acquittal of one constitutes no bar to prosecution for the other. (See *People v. Flaherty,* 396 Ill. 304, 309.) Furthermore, the courts of Illinois have frequently stated and "*   *   * have repeatedly held that contempt is not a crime." (*People ex rel. Chicago Bar Association v. Barasch,* 21 Ill.2d 407, 410, 173 N.E.2d 417.) Both constitutional provisions above cited used the words "for the same offense" as the basic element of double jeopardy. As shown, these proceedings do not involve the same offense as did the former criminal case. The attempted defense of double jeopardy is inapplicable here.

Respondent next urges that he was not a party to the original proceedings which resulted in the injunction; did not aid or abet any other person in violation thereof; and, therefore, he has been wrongfully

punished for contempt. Many cases are cited in respondent's brief decided by the courts of Illinois as well as by the Federal courts in this and other circuits. We need not consider or analyze each of these cases. The correct and proper principle of law to be applied in this case is set forth in the Illinois Statute on Injunctions as amended in 1967. (Ill. Rev. Stat. 1971, ch. 69, par. 3—1.) The statute provides that orders granting injunctions and restraining orders are:

"* * * binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise."

The language of this statute closely parallels and in some respects is identical with the wording of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 65(d).

■■■ In the case at bar, respondent was not a party to the original injunction suit and was not served with process. Therefore, the finding of the court that he was in contempt can be justified only if he had "actual notice of the order by personal service or otherwise;" and, further, if he was an agent of the Association or other party or acted "in active concert or participation" with one of the parties. It is apparent that determination of whether or not respondent comes within these categories presents issues of fact. As above shown, the evidence is ample to justify the conclusion that the respondent had actual knowledge of the injunctional order and its terms; and, further, that he acted in active concert and participation with the Association and its officials. In this situation, we need not consider whether or not respondent acted as an agent of the Association. The trial court saw and heard the witnesses who testified to these facts including the respondent himself. Under these circumstances, we are obliged to accept his conclusions unless they are contrary to the manifest weight of the evidence. (*Schulenburg v. Signatrol, Inc.*, 37 Ill.2d 352, 356, 226 N.E.2d 624.) These factual conclusions are inherent in the order of court punishing respondent for contempt. They are amply supported by the evidence in this case.

We will add that, prior to the enactment of the statute, the decided cases in this jurisdiction established that injunctional orders may be binding not only upon the parties to the suit but also upon all persons who had actual notice of the injunction and its contents. (*O'Brien v. People*, 216 Ill. 354 at page 367.) In addition, it has long been the law of Illinois, following principles previously established by the courts of England, that persons not party to the suit with knowledge of the injunction who aid or abet or deliberately assist violation of the injunction

by the named parties may be punished for contempt. (*Sloan v. People*, 115 Ill.App. 84 at pages 90 and 91.) No case to the contrary appears among the many citations in respondent's brief.

The decisions most relied upon by respondent, namely, *Alemite Mfg. Corp. v. Staff*, 42 F.2d 832, and, *Garrigan v. United States*, 163 F. 16, do not take a contrary view of the law but differ factually from the case at bar. In *Garrigan*, the court held that the evidence failed to prove knowledge of the injunction and failed to prove that the alleged contemnor was engaged by or with any enjoined person or association. (See 163 F. 16, at page 23.) In *Alemite*, the same principle of law was established. The court held that a respondent not a party to the cause who aided and abetted the defendant or was "legally identified" with him could be punished for violation of the injunction. As a factual matter, however, any violation that the respondent may have committed there was completely independent from the named parties. The identical situation existed in *United Pharmacal Corp. v. United States*, 306 F.2d 515, where the same rule of law was again applied. *Alemite* was cited and the court held that the alleged contemnor did not act in concert or participation with the defendant; and, therefore, could not be punished.

■■ The one remaining point raised in this phase of the appeal by counsel for respondent is that since the Association and both of its officers were discharged by the court, it was basically inconsistent; and, therefore, legally impermissible for the court to find respondent guilty of aiding or abetting them. There is a twofold answer to this contention. First, from the point of view of this reviewing court, the alleged inconsistency is more apparent than real. That portion of the order discharging the rule against the defendants is not before this court for review. We have no jurisdiction whatsoever over that determination by the trial court. Therefore, it is our duty to make, and we accordingly have made, our own independent examination of the evidence solely for determination of respondent's appeal. As stated, it is amply sufficient to demonstrate the guilt of respondent.

■■ Secondly, we find a virtually identical situation in *Sloan v. People*, 115 Ill.App. 84. There, a rule to show cause for violation of an injunction was entered against certain defendants and also against Sloan, who was not a party to the original case. A number of the named defendants were dismissed on plaintiff's motion. However, Sloan was found guilty of contempt and punished accordingly, but one of the named defendants was discharged at the same time. (See 115 Ill.App. 84, at page 87.) This court held that it was not "* * * necessary that any of the defendants

should have been found guilty of violating the injunction before the appellants could be held guilty and punished, as they were in this case, for aiding and abetting the defendants in violating the injunction." 115 Ill.App. 84, at page 90.

We find that *Sloan* remains the law of Illinois to this day. To our knowledge it has not been overruled or even modified by any later authority. In fact, the basic doctrine epitomized by *Sloan* of liberalizing the concept of flexibility in permitting punishment of a guilty person who allegedly acted in concert or as an abettor, regardless of discharge or acquittal of the alleged primary contemnor, has been recently adopted as part of the criminal law of Illinois. Compare *People v. Wyherk*, 347 Ill. 29, 178 N.E. 890, holding that in joint trials conviction of the principal is essential to conviction of the accessory with the Criminal Code of Illinois, effective January 1, 1962, permitting a person legally accountable for the conduct of another to be convicted although that other person has been acquitted or even not prosecuted. (Ill. Rev. Stat. 1971, ch. 38, par. 5—3.) See also S.H.A., ch. 38, sec. 5—3 at page 315 for Committee Comment.

The final contention by respondent is that he was deprived of his right to due process of law. In this regard, respondent makes a rather circuitous argument. He urges first that he was actually acting in this entire situation only in his capacity as an official of Local 576 of the Journeymen Barbers Union. This union is described by respondent as a labor organization totally separate from the Association. The argument then proceeds with a general legal proposition that the establishment of minimum prices by respondent's labor union was a legitimate labor objective which did not violate the Illinois Antitrust Act. Respondent cites *American Federation of Musicians v. Carroll*, 391 U.S. 99, 88 S.Ct. 1562. It is pointed out that, since the members of respondent's union receive a percentage of the amount paid by the customer, the union is legitimately interested in maintaining prices.

Respondent tendered to the trial court a copy of a decision entered in the circuit court of Lake County, Illinois. There, the Attorney General, acting for the people of Illinois, sued Local 716 of the Journeymen Barbers International Union and a consent decree was entered enjoining the union from establishing minimum prices. However, the same court subsequently held that this activity by the union was legitimate under the *American Federation of Musicians* case and vacated the consent decree. Respondent then completes the argument by contending that the Attorney General filed the within proceedings against respondent because of a realization that a suit against the union would be unavailing.

Even if this unsupported assertion were correct, it is difficult to understand how any violation of respondent's right to due process of law is involved.

■■ The Attorney General urges that the record shows that respondent was acting to further the business and interests of the Association. He argues that the labor union is not involved in the case at bar and that the only issue here is whether respondent acted in active concert or participation with the Association. In our opinion, these points raised by the Attorney General are a complete answer to this attempted argument. In addition, the record shows that respondent tendered and argued this defense, which was rejected by the trial court. The ruling of the court was correct and it is approved. No showing is made by respondent of any facts or legal principles which would make the injunctional order here involved void as distinguished from erroneous. Therefore, as conceded by respondent, it was the duty of respondent and all other persons involved in this matter to obey the injunctional order until there was "* * * a judicial determination of its legality * * *." See *County of Peoria v. Benedict*, 47 Ill.2d 166, 170, 265 N.E.2d 141.

The order appealed from is fully supported by the evidence and by the law. It is, therefore, affirmed.

Order affirmed.

EGAN and STAMOS, JJ., concur.