T. Willie **SIMON**, Appellant,

v.

**UNITED STATES of America,**
**Appellee.**

**No. 22229.**

United States Court of Appeals
District of Columbia Circuit.

Argued Sept. 25, 1969.

Decided Jan. 2, 1970.

Mr. Thomas Penfield Jackson, Washington, D. C. (appointed by this court) for appellant.

Mr. Philip L. Kellogg, Asst. U. S. Atty., with whom Mr. David G. Bress, U. S. Atty., at the time the brief was filed, was on the brief, for appellee. Messrs. Thomas A. Flannery, U. S. Atty., John A. Terry, and Clarence A. Jacobson, Asst. U. S. Attys., also entered appearances for appellee.

Before BAZELON, Chief Judge, FAHY, Senior Circuit Judge, and ROBINSON, Circuit Judge.

FAHY, Senior Circuit Judge:

Appellant was indicted for second-degree murder and was convicted of that offense. The principal question on appeal is whether the court—though not requested to do so—should have instructed the jury on involuntary manslaughter. We conclude that such an instruction was not required since the evidence did not warrant it.

The case against appellant consisted primarily of the testimony of three witnesses. It appears from their testimony that on the night of March 4–5, 1966, a number of people had gathered at Joe's Place, a restaurant located on the southwest corner of 8th and F Streets in Northeast Washington. When the restaurant closed after midnight, those who had been inside dancing and drinking beer came out onto the sidewalk. Among them was appellant and Ellaine White. She testified that as she was walking home on the south side of F Street towards 7th Street with Grover Thomas, the appellant came up beside her and pointed to three boys ahead of them almost to the corner of 7th and F Streets. He said one of them had "done something" to him and that he "was going to get him." He pulled out a gun which she knocked down with her hand, exclaiming, "don't do that." She further testified that she heard two shots, one before and one after she started running back to the restaurant.

Grover Thomas, who was accompanying Ellaine White when they were approached by appellant, testified that appellant fired a pistol at the three boys one of whom was the deceased, Gordon Dean. The boys, who were ahead of the witness and Ellaine White on F Street, broke and ran. Dean ran around the corner of F Street and the other two men ran to the north side of F Street. He also testified that when appellant pulled out his pistol Ellaine White grabbed appellant's arm but that appellant jerked her loose and, thus disengaged, fired one shot up F Street and another at an angle towards the north side of F Street.

The third witness, James Bishop, testified that he left Joe's Place after midnight and, as he was approaching the corner of 7th and F streets, on the north side of the street, he heard two shots from- the direction of the restaurant across the street. He observed a crowd outside the restaurant and recognized Ellaine White. He testified that she was pulling someone's arm down in what appeared to be a scuffle, and then, after the shots, he saw the deceased Gordon Dean run around the southeast corner of 7th and F Streets and head south on 7th Street towards Acker Street, where he collapsed. The witness stayed with Gordon Dean until the police arrived. It is not disputed on appeal that one of the shots caused the death of Gordon Dean.

Appellant testified in his own behalf but denied any connection whatsoever with the events described by these witnesses. Except for his testimony, which of course gave no foundation for an instruction on involuntary manslaughter, we find none which differs from that of the three witnesses whose testimony we have outlined.

■ The jury was instructed on the elements of second-degree murder [1] and the lesser-included offense of voluntary manslaughter.[2] Whether appellant was also entitled to an involuntary manslaughter instruction, as he now claims on appeal, depends upon the existence of at least some evidence in the record fairly tending to bear upon the issue of that

---

1. The trial court charged the jury on second-degree murder in part as follows:
    [O]ne * * * the defendant inflicted injury or injuries upon a decedent from which the deceased died; and two * * * the defendant at the time he so injured the deceased acted with malice.
        * * * * * *
    Malice may be expressed or implied. * * * Implied malice may be inferred from the circumstances of the killing, as for example, when the killing is caused by intentional use of fatal force * * * or when any act which imports danger to another is done so recklessly or wantonly as to demonstrate depravity of mind and disregard of human life.

2. Manslaughter was defined to the jury as follows:
    [M]anslaughter is the unlawful killing of a human being without malice.
    Manslaughter is committed when a human being is killed unlawfully in the sudden heat of passion caused by adequate provocation * * * and * * * without legal justification or excuse.

offense.[3] Before applying this evidentiary standard to the present case we examine the elements of involuntary manslaughter.

Neither voluntary nor involuntary manslaughter is defined in our Code, which provides only for the punishment of manslaughter,[4] in contrast with the United States Code.[5] In the absence of a statutory definition in our Code [6] this court has adopted the general common law definition of manslaughter,[7] and with equal justification for relying upon the common law we distinguish voluntary manslaughter,[8] as to which the court instructed, from involuntary manslaughter.

■ Evidence of reckless conduct unintentionally resulting in death may form the basis for an involuntary manslaughter instruction. The offense has been explicitly recognized by this court as long ago as the decision in Story v. United States, 57 App.D.C. 3, 16 F.2d 342, 53 A.L.R. 246 (1926).[9] See, also, Nestlerode v. United States, 74 App.D.C. 276, 122 F.2d 56 (1941).[10] In Thomas v. United States, 136 U.S.App.D.C. 222, 419 F.2d 1203, the court instructed the jury that malice, a necessary element of second-degree murder, might be inferred from conduct so reckless as to manifest a depraved mind and a disregard for human life, but there was no charge on the degree of recklessness which would support the lesser included offense of involuntary manslaughter. A reversal of the second-degree murder conviction was necessitated by the court's inability to determine the extent to which the jury's finding of malice was influenced

3. Stevenson v. United States, 162 U.S. 313, 323, 16 S.Ct. 839, 40 L.Ed. 980 (1896); Kinard v. United States, 68 App.D.C. 250, 253, 96 F.2d 522, 525 (1938); Belton v. United States, 127 U.S.App.D.C. 201, 206, 382 F.2d 150, 155 (1967).

4. 4 D.C.Code § 22–2405 provides:
Whoever commits manslaughter shall be punished by a fine not exceeding one thousand dollars, or by imprisonment not exceeding fifteen years, or by both such fine and imprisonment.

5. 18 U.S.C. § 1112 provides:
"[Involuntary] manslaughter is the unlawful killing of a human being without malice * * * [i]n the commission of an unlawful act not amounting to a felony, or in the commission in an unlawful manner, or without due caution and circumspection, of a lawful act which might produce death.
It should be noted in passing that the federal statute includes an aspect of the common law definition of involuntary manslaughter predicated on the commission of an unlawful act not amounting to a felony, see United States v. Pardee, 368 F.2d 368 (4th Cir. 1966), in addition to recklessness. As yet, however, we have had no previous occasion to apply this part of the common law definition, nor is it applicable to the present case.

6. In Hill v. United States, 22 App.D.C. 395, 401 (1903), the court held that "All crimes * * * known to the common law, except as otherwise provided by statute, are still in force in this District."

7. See, e. g., Fryer v. United States, 93 U.S. App.D.C. 34, 38, 207 F.2d 134, 138 (1953), cert. denied, 346 U.S. 885, 74 S. Ct. 135, 98 L.Ed. 389, where manslaughter was defined as the "unlawful killing of a human being without malice."

8. See, Kinard v. United States, note 3, supra; Bishop v. United States, 71 App. D.C. 132, 107 F.2d 297 (1939); Austin v. United States, 127 U.S.App.D.C. 180, 382 F.2d 129 (1967).

9. The manslaughter instruction discussed in Story by Mr. Justice Robb, which was followed by Story's conviction, was based at least in part on the reckless and felonious operation of an automobile. The accused's sentence was for five years, from which it is clear the crime was not the misdemeanor referred to in 40 D.C. Code § 606 where the homicide results from the operation of a vehicle at an immoderate speed or in a careless, reckless or negligent manner, but not willfully or wantonly.

10. Involuntary manslaughter instructions were recently discussed in United States v. Dixon, 135 U.S.App.D.C. 401, 419 F.2d 288 (concurring opinion of Judge Leventhal), where it is pointed out that in addition to manslaughter committed in the heat of passion, see note 2 supra, "a manslaughter verdict may be predicated on recklessness." United States v. Carter, 136 U.S.App.D.C. 308, 420 F.2d 150; Thomas v. United States, 136 U.S. App.D.C. 222, 419 F.2d 1203.

by evidence of recklessness which might only have justified an involuntary manslaughter verdict.

 No such difficulties are presented in the present case since the evidence is insufficient to give rise to a reasonable doubt that appellant intended to shoot one of the young men, assuming as we must that the jury did not believe appellant's testimony entirely disassociating himself from the events about which three eye-witnesses testified.[11] Evidence of malice, or possibly although unlikely of sudden heat of passion, was presented to the jury by uncontroverted testimony that appellant intended to shoot one of three persons ahead of him. Absent testimony that would cast doubt upon such a clear showing of appellant's intent any recklessness which might be derived from the record relates only to the accuracy of appellant's aim.[12] This sort of recklessness, however, did not justify an involuntary manslaughter instruction.

The only other contention of appellant is that the prosecutor's reference to a missing witness in his closing argument was so prejudicial that the court was obligated to instruct the jury that the prosecutor had an opportunity to call the witness but failed to do so. The prosecutor had asked appellant, when he was on the stand, about the whereabouts of a man appellant had mentioned as one who might support his alibi. Appellant answered that he was "outside," leaving the inference that he was outside the courtroom. In a remark during closing argument the prosecutor referred to the matter in a way which suggested to the jury that if this person could support appellant's alibi he was readily available

to do so. While the court did not give the instruction requested by defense counsel, it did charge the jury that since the witness was available to both sides but was called by neither the jury was to draw no inference from the failure of the witness to testify. We think this instruction clarified the situation in a manner which leaves no basis for us to find prejudicial error in the prosecutor's remarks.

Affirmed.

---

11. In the evidentiary context of this case, as distinguished from *Thomas*, the inclusion in the court's instruction of recklessness as an element of second-degree murder and not as an element of involuntary manslaughter does not constitute reversible error.

12. Counsel for appellant at oral argument forcefully contended that the testimony, especially that of Bishop, suggested that the fatal shot might have been fired in the midst of a struggle with Ellaine White. Even if the record were to support such a view, there is no merit in the additional suggestion that the appellant never intended to shoot at the deceased or one of those walking with the deceased.