**UNITED STATES of America**

v.

**Patricia DENT, Appellant.**

**No. 72–1321.**

United States Court of Appeals,
District of Columbia Circuit.

Decided March 30, 1973.

As Amended April 4 and April 26, 1973.

Michael Mulroney, Washington, D. C. (appointed by this Court) was on the brief for appellant.

Harold H. Titus, Jr., U. S. Atty., John A. Terry, and Lawrence H. Wechsler, Asst. U. S. Attys., were on the brief for appellee.

Before LEVENTHAL and ROBB, Circuit Judges, and JAMESON,* United States Senior District Judge for the District of Montana.

PER CURIAM:

Appellant was convicted of manslaughter in the stabbing of her brother, Leroce, and appeals from a judgment of 6 to 24 months' imprisonment on the grounds that the judge should not have submitted the second degree murder charge to the jury, and that he failed to instruct the jury adequately on accidental homicide. We affirm.

The facts, developed principally by John Barsh, a friend of the deceased Leroce, are: The night of March 1, he and Leroce were drinking beer in the hallway of the small apartment building

---

* Sitting by designation pursuant to 28 U.S.C. § 294(d).

where Leroce and appellant lived. Appellant joined them; she and her brother began to discuss bills to be paid; the two then moved to appellant's room, where the discussion heated into an argument. When Leroce turned to abuse of their father, appellant asked her brother to leave the house. Leroce left the room, went outside for 10–15 minutes, then returned, and the argument was renewed in the entrance hallway.

When Leroce again went outside for several minutes, appellant went to the kitchen and returned holding, in her right hand, a knife with a six-inch blade. Meanwhile, Leroce had reentered the hall; and the argument was renewed. Barsh grabbed the appellant and urged her in vain to drop the knife. The argument continued, marked now by Leroce's taunt to appellant: "Stab me".

Leroce eventually turned and walked out of the house. Barsh released appellant, who ran out, picked up a beer can in her left hand and threw it at her brother. Leroce turned, picked up a mop or broom handle from the front yard, and struck the appellant with it. Leroce tried to run down the front steps but was grabbed by appellant. They scuffled on the front porch. She held the knife in her right hand and held onto Leroce with her left arm, trying to get his arm from her neck. Barsh tried to separate the pair, could not, and retired to the side of the porch. When the struggle ended, Leroce lay on the front porch, dying of a stab wound some four inches deep, which penetrated the heart.

Barsh, who did not see the struggle in its entirety, testified that he believed Leroce was trying to escape his sister and that she was holding on to him. The appellant, who took the stand in her own defense and in broad terms corroborated Barsh's testimony up to the critical juncture, asserted that Leroce was trying to throttle her. She claimed that she had armed herself in self-defense out of fear that Leroce would do her violent injury. She went to get the knife because, "I figured I could scare him" and to "try to get him out of the house." Several defense witnesses testified that Leroce had a reputation for assaultive behavior.

The instructions given to the jury by the trial judge covered the elements of the pertinent offenses. He charged the jury, inter alia: Malice may be inferred from the willful use of a deadly weapon, where not explained or justified by the circumstances, or where the act is done so recklessly or wantonly as to manifest deprivity of mind and disregard for life. A homicide is manslaughter when committed intentionally in the heat of passion, caused by adequate provocation, such as might naturally induce a reasonable person to lose self-control and to act on impulse. Manslaughter may be established by a homicide resulting from recklessness — not "mere negligence alone," but "recklessness involving extreme danger of death or serious bodily harm, a gross deviation from the standards of conduct that a reasonable person would observe." The high degree of recklessness requisite for malice and murder is distinguished from the lesser recklessness constituting manslaughter, by reason of the quality of defendant's awareness of risk—either actually, or from the showing of such danger "that any reasonable person must have been aware of it." "And, as I say, there is a third degree of conduct not amounting to recklessness at all, which is simply negligence, and you may not infer the element of recklessness in either instance if that is all you find was present." These instructions are in accordance with our rulings. See, e. g., United States v. Lumpkins, 141 U.S.App.D.C. 387, 439 F. 2d 494 (1970); Thomas v. United States, 136 U.S.App.D.C. 222, 224, 419 F.2d 1203, 1205 (1969); United States v. Dixon, 135 U.S.App.D.C. 401, 403, 419 F.2d 288, 290 (1969) (concurring opinion); Belton v. United States, 127 U.S.App.D.C. 201, 382 F.2d 150 (1967).

■ The instructions have been paraphrased rather than quoted as given, for we do not wish to imply that they are a model. However, our recognition that they may well have been modified so as to be more clear and meaningful to the

jury does not gainsay our conclusion—on this record, which inter alia shows no request for clarification that was denied—that there was no prejudicial error.

■ The submission of the murder charge to the jury presents no reversible error. We need not now determine whether there was sufficient evidence of malice to sustain a second degree conviction. The prejudice alleged is one step removed when the jury has acquitted of murder. Howard v. United States, 128 U.S.App.D.C. 336, 389 F.2d 287 (1967). In that context we find enough evidence of malice to warrant a murder charge. The jury might have inferred an intentional stabbing and given short shrift to the claim of self-defense urged at trial. As to the issue of recklessness that has become the focus on appeal, the jury might well have inferred a reckless disregard of the possibility of death or serious bodily injury.

■■ As to the claim that the trial judge erred in failing to instruct the jury adequately as to accidental homicide, we have already indicated our approval of the instructions. The judge instructed the jury that mere negligence was not sufficient for culpability, that there must be recklessness. Appellant seems to complain that this point was only made in a single sentence or so, and that much more of the charge was devoted to the distinction between degrees of recklessness. However, that is only to say that more time was devoted to the more complicated matters. The complexity of the analysis of the "recklessness" that constitutes culpable homicide, and in what degree, is undeniable. The principles reviewed in United States v. Dixon, *supra* (concurring opinion), and accepted by this court in *Thomas* and other opinions, are hopefully helpful in analysis, but the subject certainly remains complicated. There is no complaint of denial of an instruction. Appellant by her own testimony admitted that during a heated argument with her brother she went to the kitchen for a knife in order to "scare him", and further admitted that she struck at her brother with her fist as she was holding the knife in her hand. We think that the jury understood the essence of its task and rendered a verdict supported by the evidence.

■ Finding no reversible error,* we hold the judgment must be

Affirmed.

---

* Appellant's counsel also raises a claim of ineffective assistance of counsel, in that counsel at sentencing received the presentence report and the psychiatric report of Dr. Whyte, but failed to obtain the concluding recommendation of the probation officer. This, it is urged, showed that the probation officer had misunderstood the recommendation of the psychiatrist as being in favor of incarceration.

The arguments now advanced to this court were presented to the trial judge in a motion for reduction of sentence, which was denied. The sentencing transcript reassures us that the trial judge studied all of the reports with care. He was capable of drawing his own conclusion from the psychiatrist's report. The trial judge stated that he felt appellant would benefit from a short period of incarceration in spite of Dr. Gant's opinion that incarceration would be counter-productive and counter-therapeutic.

We conclude that the pertinent matters have been considered by the judge who has sentencing discretion, that this process was conducted reflectively and without prejudicial error of law.