UNITED STATES, Appellant,

v.

Denise BRADFORD, Appellee.

UNITED STATES, Appellant,

v.

Charles L. PENDER, Appellee.

Nos. 8093, 8245.

District of Columbia Court of Appeals.

Argued July 17, 1974.

Decided Aug. 26, 1975.

William D. Pease, Asst. U. S. Atty., with whom Earl J. Silbert, U. S. Atty., John A. Terry, Raymond Banoun and John C. Lenahan, Asst. U. S. Attys., were on the brief, for appellant.

W. Gary Kohlman, Washington, D. C., for appellee Bradford.

Joel M. Finkelstein, Washington, D. C., for appellee Pender.

Before REILLY, Chief Judge and KELLY and GALLAGHER, Associate Judges.

KELLY, Associate Judge:

These consolidated criminal appeals present the issue whether the government may charge a defendant with both voluntary and involuntary manslaughter in a single count of an indictment.[1] The government, as the appellant, argues that man-

---

1. Although the merits of the trial court's simultaneous denial of appellant Pender's motion to dismiss for lack of speedy trial are argued in his brief, that issue is not properly before us.

slaughter is a unitary offense which can be committed by alternate means, either voluntarily or involuntarily, and that the proscription against duplicity does not bar the inclusion of both in a single count in an indictment. On the other hand, appellees contend that voluntary and involuntary manslaughter are separate offenses, with different composite elements, whose inclusion in a single count of an indictment is duplicitous. Appellees also argue that at some point the government should be required to elect the one offense on which it plans to proceed. We conclude that voluntary and involuntary manslaughter are separate offenses which must, if combined in a single indictment, be charged in separate counts. In so holding we affirm the decision of the trial court in *United States v. Bradford*, No. 8093, dismissing the indictment as duplicitous. We also affirm the dismissal of the indictment in. *United States v. Pender*, No. 8245, and approve the trial court's finding in its comprehensive memorandum opinion that these separate offenses may be included in separate counts of one indictment. Our present holding was, of course, foreshadowed by *United States v. Pender*, D.C.App., 309 A. 2d 492 (1973), in which a panel of this court held that the language of the indictment there in issue charged only involuntary manslaughter.

I

In a one-count indictment filed September 12, 1972, appellee Charles L. Pender was charged with manslaughter, as follows:

> On or about August 11, 1972, within the District of Columbia, Charles L. Pender *feloniously, wantonly and with gross negligence,* shot Gregory Coleman with a gun, thereby causing injuries from which the said Gregory Coleman died on or about August 11, 1972. [Emphasis supplied.]

At Pender's request the trial court construed this indictment to charge only involuntary manslaughter; however, when the government was ordered to proceed on that theory alone it chose not to do so and the indictment was dismissed without prejudice. On the government's appeal to this court the dismissal was affirmed on the ground that the term "feloniously", used in the indictment, did not suffice to charge voluntary manslaughter; thus the indictment charged involuntary manslaughter only. *United States v. Pender, supra* at 493.

A new Pender indictment, filed by the government on November 29, 1973, charged that:

> On or about August 11, 1972, within the District of Columbia, Charles L. Pender, without justification or excuse, *intentionally, and by reckless conduct involving extreme danger of death and serious bodily injury and by gross deviation from the standard of conduct that a reasonable man would observe,* shot Gregory Coleman with a gun, thereby causing injuries from which the said Gregory Coleman died on or about August 11, 1972. [Emphasis supplied.]

Appellee Denise Bradford, originally charged in an indictment identical to Pender's, was reindicted as follows:

> On or about April 3, 1973, within the District of Columbia, Denise Bradford, without justification or excuse, *intentionally and with gross negligence,* threw Carl D. Taylor down a flight of stairs, thereby causing injuries from which the said Carl D. Taylor died on or about April 4, 1973. [Emphasis supplied.]

Her motion to dismiss the indictment as duplicitous was granted without prejudice on · December 21, 1973, after the government refused to elect on which form of manslaughter it would proceed. A similar motion by appellee Pender was granted on March 13, 1974, also without prejudice, with the court holding that if the government wished to charge both voluntary and

involuntary manslaughter in one indictment it must do so in separate counts.

The government appeals both dismissals. Its prime concern in each case appears to be that a manslaughter conviction could not be sustained if an indictment charged voluntary and involuntary manslaughter in separate counts. This conclusion is dependent, of course, on the validity of the government's contention that manslaughter is a unitary offense. It is conceded by the government that each indictment charges both voluntary and involuntary manslaughter in the one count. It also appears from the record that the wording in the original indictments in these cases has for years been the standard manslaughter indictment in the District of Columbia.

## II

■ Super.Ct.Cr.R. 8(a), as well as applicable case law, requires that different substantive offenses be charged in separate counts of an indictment.[2] The most obvious inequity in including different offenses in a single count is that, upon conviction, it is not clear to which crime the guilty verdict refers and thus what penalty should be imposed.[3] In the instant cases, however, the punishment prescribed by statute is "a fine not exceeding one thousand dollars" or "imprisonment not exceeding fifteen years" or "both such fine and imprisonment."[4] Nevertheless, while the statutory punishment for voluntary and involuntary manslaughter is ostensibly the same, it is most likely that a sentencing court would impose a more lenient sentence for an unintentional homicide than for an intentional one and also that prospects of parole would be greater for the former. As the trial judge in *Bradford* states, "the public might have more censure for an intentional act than [for] gross negligence."[5] He expressed his own response as follows: "Suppose that I have this lady for sentencing here and that I would like to know whether it was an intentional act or gross negligence. Maybe in one case I would give a jail sentence and the other case I wouldn't. . . ." Thus, a defendant is prejudiced by a general verdict of guilty on a "manslaughter" charge by the possible imposition of a more severe penalty for the intentional crime of voluntary manslaughter.

Other infirmities attend a one-count indictment when the one count contains charges that could constitute different offenses. One is that a duplicitous count hampers both judge and jury in their respective considerations of the evidence. Motions for acquittal, and the deliberations of the jury, require that each determine whether the elements of the crime charged have been proved. If the elements of more than one crime are contained in one count, they will be inextricably mixed, and a defendant may be convicted on proof of

2. Super.Ct.Cr.R. 8(a) reads in pertinent part:
   Two or more offenses may be charged in the same indictment or information *in a separate count for each offense* if the offenses charged, whether felonies or misdemeanors or both, are of the *same or similar character* or are based on the same act or transaction . . . . [Emphasis supplied.]
   *Driscoll v. United States,* 356 F.2d 324, 332 (1st Cir. 1966); *United States v. Bachman,* 164 F.Supp. 898, 900 (D.D.C.1958); *Hotchkiss v. District of Columbia,* 44 U.S. App.D.C. 73 (1915).

3. *Brown v. United States,* 112 U.S.App.D.C. 57, 59, 299 F.2d 438, 440 (1962). *See*

*United States v. Starks,* 515 F.2d 112 (3d Cir. 1975).

4. D.C.Code 1973, § 22–2405:
   Whoever commits manslaughter shall be punished by a fine not exceeding one thousand dollars, or by imprisonment not exceeding fifteen years, or by both such fine and imprisonment.

5. Under the federal manslaughter statute, for example, one convicted of voluntary manslaughter can be imprisoned up to ten years, while a defendant convicted of involuntary manslaughter can be imprisoned up to three years, or fined not more than $1,000 or both. 18 U.S.C. § 1112(b) (1966).

the elements of one crime only or on proof of some elements of each.[6]

In this jurisdiction the jury deliberations would not only be confused by a duplicitous count but a verdict of guilty would be improper, since a unanimous finding of guilt is required by Super.Ct.Cr.R. 31(a). A general verdict of guilty in such a case would not reveal whether the defendant was unanimously found guilty of one crime and innocent of the others or unanimously found guilty of all.[7]

Lastly, duplicitous counts in an indictment may violate, and certainly do not facilitate, the accused's right to be free from more than one prosecution for the same offense; the right of protection against double jeopardy.[8] If the count is duplicitous and it is unclear of which crime the defendant has been convicted,[9] he may thereby be vulnerable to subsequent prosecutions for an offense for which he has once been tried.[10]

The prohibition against duplicity also protects a defendant's right under the Sixth Amendment and Super.Ct.Cr.R. 7(c) to notice of the "nature and cause of the accusation" against him so that he may prepare his defense. This aspect of the rule is not a predominant consideration here, however, for appellees have been well enough informed of the specific charges against them.

▬▬▬ Contrary to the assertion of appellee Pender, however, the doctrine of duplicity does not save a defendant from the

6. Different means by which a single offense can be committed may be included in a single count, however. Super.Ct.Cr.R. 7(c); *Gerberding v. United States,* 471 F.2d 55, 59 (8th Cir. 1973); *United States v. Tanner,* 471 F.2d 128, 138 (7th Cir.), *cert. denied,* 409 U.S. 949, 93 S.Ct. 269, 34 L.Ed.2d 220 (1972).

7. *Cf. In Re Pearson,* D.C.App., 262 A.2d 337, 339 (1970).

8. "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb . . .." U.S.Const. amend. V.

9. "[A] general verdict of *acquittal* on a duplicitous count bars subsequent prosecution for all offenses stated in such count. *Crain v. United States* (1896) 162 U.S. 625, 16 S.Ct. 952, 40 L.Ed. 1097." 8 Moore's Federal Practice—Criminal Rules ¶ 8.03[2], at 8–7 n. 5 (1974).

10. The possibility of double jeopardy depends partly on the test which is applied to this defense in subsequent trials. Under the "same evidence" test, which is less protective of the defendant, "[o]ffenses are not the same if, upon the trial of one, proof of an additional fact is required which is not necessary to be proved in the trial of the other, although the same acts may be necessary to be proved in the trial of each." [Citations omitted.] *Hattaway v. United States,* 399 F.2d 431, 432 (5th Cir. 1968); *People ex rel. Scott v. Master Barbers & Beauty Culturists Ass'n,* 9 Ill.App.3d 981, 293 N.E.2d 393, 396 (1973); 1 Wharton's Criminal Law and Procedure § 144, at 342 (1957). Thus the defendant may be tried subsequently for different offenses arising out of the same occurrence, and this is so whether or not some elements of the offense which are the subject of the second trial are the same as those of the offense for which the defendant was first tried. (There is an exception for lesser included offenses. It is generally agreed that the accused cannot be subsequently tried for the lesser included offense if he could have been convicted of the lesser offense on the indictment for the greater. 1 Wharton's Criminal Law and Procedure § 148 (1957).)

Under the "same transaction" test, prosecution for one crime arising out of the commission of a single criminal transaction bars prosecutions for other crimes that may have been committed during the transaction regardless of whether they have the same elements as the crime charged and tried. *People v. White,* 41 Mich.App. 370, 200 N.W.2d 326, 329–31 (1972), *aff'd,* 390 Mich. 245, 212 N.W.2d 222 (1973); *State v. Brown,* 262 Or. 442, 497 P.2d 1191, 1193–99 (1972) (en banc); *cf. Harris v. Washington,* 404 U.S. 55, 92 S.Ct. 183, 30 L.Ed.2d 212 (1971).

Thus under the "same evidence" test a conviction on a duplicitous count would provide no protection to a defendant from subsequent prosecutions for the offenses charged in the original indictment even if all the facts to be proved in both prosecutions were the same since there would be no way of showing this was the case. Under the "same transaction" test, however, the defendant might still be able to avail himself of a double jeopardy defense even under the disability of a duplicitous count.

necessity of making separate and sometimes inconsistent defenses. In his case, Pender could properly be charged with both voluntary manslaughter and involuntary manslaughter in the same indictment, in separate counts, as all offenses arising out of the same act or transaction may be included in one indictment. Super.Ct.Cr.R. 8(a).[11]

### III

█ The issue, then, is whether voluntary manslaughter and involuntary manslaughter are different offenses which can and must be charged in separate counts of an indictment. And in meeting this issue *it must be kept in mind that there is no statutory definition of manslaughter in the District of Columbia.* The common law definition of manslaughter is therefore controlling. *Simon v. United States*, 137 U.S.App.D.C. 308, 310, 424 F.2d 796, 798 (1970).[12]

A continuous process of differentiation of acts [offenses] causing the death of another has occurred in the common law. Murder and manslaughter were distinguished quite early on the basis of the presence or absence of malice; the punishment for both being the same for a long period of time—death but with benefit of clergy.[13] Thus the impetus for differen-

tiation of offenses appears to have been, at least in part, the desire to save the accused from a greater degree of spiritual condemnation rather than to spare him increased physical punishment, the pivotal consideration of our present penal system. As Blackstone wrote: "[T]he law pays that regard to human frailty, as not to put a hasty and deliberate act upon the same footing, with regard to guilt [as a deliberate, premeditated killing]." 4 W. Blackstone, Commentaries *191.

Voluntary and involuntary manslaughter have been recognized at common law since Blackstone's time. 2 Burdick, The Law of Crime § 463 (1946). In his words

> [m]anslaughter is therefore thus defined, the unlawful killing of another, without malice either express or implied; which may be either voluntarily, upon a sudden heat; or involuntarily, but in the commission of some unlawful act. [4 W. Blackstone, Commentaries *191; footnote omitted.]

Voluntary manslaughter occurs

> if upon a sudden quarrel two persons fight, and one of them kills the other . . . and so it is, if they upon such an occasion go out and fight in a field; for this is one continued act of passion . . . . So also if a man be greatly provoked . . . and immediately

---

11. If voluntary manslaughter and involuntary manslaughter constituted the same offense they could still be charged in different counts of the same indictment. In this case the counts would be multiplicitous, *i. e.*, charge the same offense several times. Multiplicity is not grounds for dismissing counts from an indictment or even for electing which charges shall go to the jury. 8 Moore's Federal Practice—Criminal Rules ¶ 8.07[1], at 8–50, 51 (1974). At the sentencing stage the accused does have the right under the Fifth Amendment prohibition against double jeopardy to complain of multiplicity and to obtain concurrent rather than consecutive sentences. *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969).

12. Unlike the common law, however, which presumed malice once a homicide was proved, the Supreme Court has held that the due

process clause prevents placing upon the defendant the burden of showing absence of malice in a homicide case. *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed. 2d 508 (1975).

13. Benefit of clergy had a long and complicated history, but seems to have been at one time the privilege of obtaining a discharge of the sentence for the first offense. The offender had, at some periods, to forfeit his goods and chattels and was also burned on the left thumb to show that the privilege had been used. In the sixteenth century benefit of clergy was removed from convictions for murder. 4 W. Blackstone, Commentaries *193, *201. (This volume of Blackstone's Commentaries was first published in 1769.) *See also McGautha v. California*, 402 U.S. 183, 198, 91 S.Ct. 1454, 28 L.Ed.2d 711 (1971).

kills the aggressor . . . . [4 W. Blackstone, Commentaries *191; footnote omitted.]

Involuntary manslaughter consists of a killing "in consequence of an unlawful [act]" but one where there was no intent to do the victim "personal mischief" or "where a person does an act, lawful in itself, but in an unlawful manner". 4 W. Blackstone, Commentaries *192.

The common law distinction between voluntary and involuntary manslaughter has been generally recognized in both case law and treatises in the United States. *Mullaney v. Wilbur*, 421 U.S. 684, ——, 95 S.Ct. 1881, 1887, 44 L.Ed.2d 508 n. 14 (1975). As the court explained in *United States v. Outerbridge*, 27 F.Cas. 390, 391 No. 15,978 (C.C.Cal.1868),

[m]anslaughter is the unlawful killing of a human being without malice, express or implied. It may be voluntary or involuntary. It is voluntary when committed with a design to kill, under the influence of a sudden and violent passion caused by great provocation, which the law, in its tenderness to the infirmity of human nature, considers such a palliative

of the offense as to rebut the presumption which would otherwise arise of malice. Manslaughter is involuntary when committed by accident, or without any intention to take life. . . .

The *Outerbridge* case demonstrates that the distinction in degrees of manslaughter is of long standing in American jurisprudence. Modern expressions of the same distinction are found in *State v. Weisengoff*, 85 W.Va. 271, 101 S.E. 450, 455, 458 (1919), and, more recently, *Simon v. United States, supra*, 137 U.S.App.D.C. at 310, 424 F.2d at 798.[14]

■ Voluntary manslaughter can presently be described as an unlawful killing, intentionally committed, the requisite intent being the general intent to do the act which caused the death rather than a specific intent to cause death.[15] That is to say, that even though the accused did not intend to kill, he did intend to use such force against the decedent as would endanger him.[16] Consequently, the requisite intent in voluntary manslaughter approximates express malice, both as that term has recently been defined—a wanton disregard for human life [17]—and as it has previously

---

14. The following treatises, among others, treat the distinction between voluntary and involuntary manslaughter: 1 Russell on Crime 562 (12th ed. 1964); 1 Wharton's Criminal Law and Procedure § 272 (1957): "Manslaughter is commonly divided into voluntary or intentional, and involuntary or unintentional, manslaughter. Voluntary manslaughter is the felonious and intentional killing of another without malice aforethought, and is ordinarily committed in a sudden heat of passion caused by adequate legal provocation. Involuntary manslaughter is an unintentional homicide without malice aforethought. . . . [T]he defendant is guilty of involuntary manslaughter if death was caused by some accident occurring while he committed a nonfelonious act which is malum in se but having no natural tendency to cause death or serious bodily harm, or as the result of the defendant's culpable negligence, either in doing an act, or in omitting to do an act required by law." [footnotes omitted]; 2 Burdick, The Law of Crime § 411 (1946): "Manslaughter . . . at common law, consists of two forms, one known

as (1) voluntary, the other as (2) involuntary manslaughter."; Wharton on Homicide 6, 7 (3d ed. Bowlby 1907) [Voluntary manslaughter at common law includes all felonious homicides which result directly from any unlawful force aimed at or applied to the party slain, while involuntary manslaughter at common law includes homicides which were the accidental result of some unlawful act less than a felony, not aimed at or directed against the person slain.].

15. *Bishop v. United States*, 71 App.D.C. 132, 136–37, 107 F.2d 297, 302–03 (1939); *Kane v. United States*, 399 F.2d 730 (9th Cir. 1968), *cert. denied*, 393 U.S. 1057, 89 S.Ct. 698, 21 L.Ed.2d 699 (1969).

16. *See* Wharton on Homicide §§ 6, 166, 211 (3d ed. Bowlby 1907).

17. *United States v. Hinkle*, 159 U.S.App. D.C. 334, 336, 487 F.2d 1205, 1207 (1973); *United States v. Dixon*, 135 U.S.App.D.C. 401, 403–07, 419 F.2d 288, 290–94 (1969) (concurring opinion, Leventhal, J.).

been described at common law—an evil design, purposiveness or willfulness. Killings classified as voluntary manslaughter would in fact be second degree murder but for the existence of circumstances that in some way mitigate malice. The purpose to kill is in legal contemplation dampened where the killer has been provoked or is acting in the heat of passion, with the latter including fear, resentment and terror, as well as rage and anger. A killing committed in the mistaken belief that one may be in mortal danger is classified as voluntary manslaughter.[18]

■ The elements of voluntary manslaughter in the District of Columbia—the unlawful killing of a human being without malice—could more accurately be said to be (1) an unlawful killing of a human being (2) with malice which has been mitigated by the presence of circumstances judicially recognized as reducing the degree of criminality.

■ Involuntary manslaughter is an unlawful killing which is unintentionally committed. By unintentionally it is meant that there is no intent to kill or to do bodily injury.[19] The crime may occur as the result of an unlawful act which is a misdemeanor involving danger of injury;[20] as the result of a lawful act performed in an unlawful way; or as the result of the omission to perform a legal duty. The requisite intent in involuntary manslaughter is supplied by the intent to commit the misdemeanor, or by gross or criminal negligence, a term recently defined as lack of

awareness or failure to perceive the risk of injury from a course of conduct under circumstances in which the actor should have been aware of the risk.[21] When a person engages in conduct which results in extreme danger to life or serious bodily injury and that person should be aware of the danger but is not, a resultant death will be involuntary manslaughter.[22]

A death which occurs accidently corresponds to this set of requirements. In an accidental death there is no intent to do harm, but there is risk of which the actor may be found to have been required to be aware. Accidental deaths resulting from misdemeanors which have been regarded as involuntary manslaughter are those following an assault, the excessive correction of children by parents or teachers, [formerly] attempts to procure abortions, and the unlawful sale of drugs. Examples of involuntary manslaughter through gross negligence are deaths resulting from the administration of drugs by physicians, the leaving of poison for rats, the operation of machinery and vehicles, and the construction of buildings.[23]

■ The state of mind in involuntary manslaughter is characterized, on the one hand, by a lack of intent to cause death or injury and, on the other, by a lack of awareness of the consequences of the act amounting to an unreasonable failure of perception [criminal negligence] or the intention to do an act which is a misdemeanor and is in some way dangerous. The elements of involuntary manslaughter

18. *United States v. Heath*, 20 D.C. (9 Mackey) 272 (1891).

19. 2 Burdick, The Law of Crime § 464 (1946).

20. *United States v. Grady*, 157 U.S.App.D.C. 6, 8 n. 3, 481 F.2d 1106, 1108 n. 3 (1973).

21. *United States v. Dixon*, 135 U.S.App.D.C. 401, 405–06, 419 F.2d 288, 292–93 (1969) (concurring opinion, Leventhal, J.).

22. This definition assumes that the act is not one from which malice [wanton disregard for human life] can be implied, and that there is

consequently no question of murder involved.
   In terms of the actor's awareness of risk to life, if he is aware of the risk, the crime is murder and not involuntary manslaughter. If he is not aware, implied malice is not a factor, and he should have been aware, the crime is involuntary manslaughter. If he was not aware of the risk and he should not have been aware of it, there is no criminal liability. The last is a situation of pure accident. *See United States v. Cox*, 166 U.S.App.D.C. 57, 61, 509 F.2d 390, 393–94 & n. 4 (1974) (concurring opinion, Leventhal, J.).

23. 2 Burdick, The Law of Crime § 465a and 466b (1946).

could be stated as (1) an unlawful killing of a human being (2) with either (a) the intent to commit a misdemeanor dangerous in itself or (b) an unreasonable failure to perceive the risk of harm to others.[24]

At the same time that voluntary and involuntary manslaughter have legally existed as separate offenses, however, it has not been the practice to charge them separately and explicitly in indictments. "[U]nless it should be required by statute, the terms 'voluntary' and 'involuntary' are not now introduced either in indictment, verdict, or sentence. . . . [T]he offense is simply charged as 'manslaughter;' and 'manslaughter' is a term used by the jury in case of conviction. . . ." Wharton on Homicide § 211 (3d ed. Bowlby 1907). In this jurisdiction indictments for "manslaughter" have issued for over 150 years.[25] But as our Circuit Court of Appeals has said:

> [C]ommon law doctrines are not frozen for criminal cases any more than civil cases, and the courts charged with voicing the common law of the District of Columbia take account of the evolution of common law principles in the light of current perceptions and needs. . . . [*United States v. Schoefield* 150 U.S. App.D.C. 380, 381, 465 F.2d 560, 561 (footnotes omitted), *cert. denied*, 409 U.S. 881, 93 S.Ct. 210, 34 L.Ed.2d 136 (1972).] [26]

▮ It must be recognized that voluntary and involuntary manslaughter are separate offenses which must, if charged in a single indictment, be charged in separate counts.

Our holding today accords with our previous decision in *United States v. Pender, supra,* which explained to the government that an indictment which alleges the accused "feloniously, wantonly and with gross negligence" shot the deceased charges only involuntary manslaughter. *Id.* at 493. Implicit in that holding is the determination that voluntary manslaughter is a separate offense which must, under the rule against duplicity, be charged in a separate count. As we have seen, this is also the teaching of the common law. The principal cases relied on by the government, *United States v. Alexander,* 152 U.

---

24. The conclusion that voluntary and involuntary manslaughter are separate offenses could be reached from a theoretical point of view alone, without a detailed consideration of the case law. The government contends that the terms voluntary and involuntary merely refer to the manner in which the killing is accomplished. In a broad sense that observation is true, but the criminal law has long existed in a greater state of analytic refinement.

The terms voluntary and involuntary go to the kind of intent that is present in these crimes. The two crimes have been distinguished as the one constituting an intentional killing and the other an unintentional killing. Since intent is an essential element of a crime, it would be impossible for them to be the same crime. (For recent discussions of the development of intent as an element and the role it presently plays in criminal prosecutions, see *Gorham v. United States,* D.C.App., 339 A.2d 401 (1975) (en banc) (dissenting opinion, Fickling, J.) and *United States v. Barker,* 514 F.2d 208 (D.C. Cir., 1975) (concurring opinion, Bazelon, C. J.)).

The description of the difference in intent has varied over time. It was once thought that an intent to kill had to be present in the crime of voluntary manslaughter, and that involuntary manslaughter differed in that there was no intent to kill. The contemporary distinction in this jurisdiction, as set out in the foregoing text, is that voluntary manslaughter involves an intent to endanger or apply force and involuntary manslaughter involves either an intent to do an unlawful act which is dangerous or a culpable lack of awareness of danger.

25. *E. g., Hudson v. United States,* 97 U.S. App.D.C. 153, 229 F.2d 153 (1956) (indictment and conviction on charge of manslaughter) ; *United States v. McLaughlin,* 26 F.Cas. 1126 No. 15,697 (C.C.Dist.Col. 1807) (indictment at common law for manslaughter).

26. *Cf. Mullaney v. Wilbur, supra,* reversing the century-old practice in Maine of presuming malice once a homicide was shown unless the defense could refute the presumption by a preponderance of the evidence and requiring instead that the prosecution prove absence of the heat of passion beyond a reasonable doubt for the presumption to be operative.

S.App.D.C. 371, 471 F.2d 923 (1972), (*as amended* 1973), *cert. denied*, 409 U.S. 1044, 93 S.Ct. 541, 34 L.Ed.2d 494 (1972); *Simon v. United States,* 137 U.S.App.D.C. 308, 424 F.2d 796 (1970), and *United States v. Dixon,* 135 U.S.App.D.C. 401, 419 F.2d 288 (1969) (concurring opinion, Leventhal, J.), do not dissuade us from our position. In *Alexander,* the court was primarily concerned with the problem of the reduction of a charge of second degree murder to manslaughter when there is evidence to show provocation. No formal distinction was made between voluntary and involuntary manslaughter in the court's discussion of the elements of manslaughter (*United States v. Alexander, supra* 152 U.S.App.D.C. at 395, 471 F.2d at 947), but there are several indications that involuntary manslaughter was considered a separate offense, first in the court's inclusion of involuntary manslaughter in its discussion at various points (*id.* at 390 n. 51, 391, 471 F.2d at 942 n. 51, 943) and second in its formulation of a separate set of jury instructions for the set of circumstances comprising involuntary manslaughter (*id.* at 395 n. 56, 471 F.2d at 947 n. 56).

The case of *Simon v. United States, supra,* establishes the opposite of the government's position. In *Simon* the appellant was held not entitled to an instruction on involuntary manslaughter because there was no evidence bearing on that offense (*id.* at 311, 424 F.2d at 799). The court stated "[e]vidence of reckless conduct unintentionally resulting in death may form the basis for an involuntary manslaughter instruction. The offense has been explicitly recognized by this court as long ago as the decision in *Story v. United States,* 57 App.D.C. 3, 16 F.2d 342, 53 A.L.R. 246 (1926). . . ." [*Id.* 152 U.S.App.D.C. at 310, 424 F.2d at 798 (footnotes omitted).] The case stands for the proposition that involuntary manslaughter is an offense in its own right rather than the idea that manslaughter is a unitary offense which can be committed by alternate means.

In *United States v. Dixon, supra,* Judge Leventhal was concerned with two overlapping problems, the intent requisite for murder and manslaughter and the propriety of basing a manslaughter verdict on reckless conduct. He concluded that reckless conduct resulting in death may constitute manslaughter under D.C.Code 1973, § 22–2405.

(*Id.* at 405, 419 F.2d at 292.) Subsequent cases in the same court recognized the opinion as a discussion of the law of involuntary manslaughter and approved it. *United States v. Dent,* 155 U.S.App.D.C. 278, 477 F.2d 447 (1973); *Thomas v. United States,* 136 U.S.App.D.C. 222, 224, 419 F.2d 1203, 1205 (1969). In *United States v. Schoefield, supra,* 150 U.S.App.D.C. at 381 n. 1, 465 F.2d at 561 n. 1, the court stated: "Recent decisions illustrating the incorporation of common law doctrine into criminal jurisprudence are the rulings that gross negligence resulting in homicide constitutes the crime of involuntary manslaughter, as at common law, under the D. C. Code provision punishing 'manslaughter' without further definition. . . ." and cited *United States v. Dixon.* Thus *Dixon* also establishes that involuntary manslaughter is a separate offense. *See also United States v. Cox,* D.C.Cir., 509 F.2d 390, 393–94 (1974). (Concurring opinion, Leventhal, J.).

**IV**

We see no due process impediment to the inclusion of counts of both voluntary and involuntary manslaughter in one indictment. Appellee Pender suggests, without citation of authority, that such a procedure may require the imposition of inconsistent defenses and confuse the jury, all to the prejudice of a defendant. In discussing this question and that of election the trial court in Pender [R. 116–17] said, and we agree, that:

Although the task of determining that the two manslaughter crimes are legally inconsistent is not facilitated by any express Congressional intent, the close scrutiny of the common law of man-

slaughter, supra, adequately demonstrates the inherent inconsistency of voluntary and involuntary manslaughter. Therefore, if the Government proceeds with a multi-count indictment, the Court doubtless would not order a pre-trial election, though it retains the discretion to order election during trial if the interests of justice require. If the Court allows the Government to go to the jury on both counts, it should not be in the nature of lesser included offenses but instead in the nature of legally inconsistent counts which will require the alternative verdict instruction. Although the defense would, in the event the Government proceeds as assumed, be burdened to some extent, the Court does not see this as violative of Due Process. Furthermore, if the Government's case on either count is weak, defendant may always avail himself of a motion for judgment of acquittal. Superior Court Criminal Rule 29(a).

V

For the above stated reasons, the orders on appeal are

Affirmed.