**Robert J. REED, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 86–1265.**

District of Columbia Court of Appeals.

Argued Dec. 1, 1988.
Decided Dec. 28, 1990.

---

Terrence M. O'Connor, Washington, D.C., appointed by this court, for appellant.

Julieanne Himelstein, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., and Michael W. Farrell, Asst. U.S. Atty., Washington, D.C. at the time the brief was filed, were on the brief, for appellee.

Before FERREN and SCHWELB, Associate Judges, and GALLAGHER, Senior Judge.

GALLAGHER, Senior Judge:

Appellant was indicted and convicted of involuntary manslaughter while armed, D.C.Code §§ 22–2405, –3202 (1989 Repl.), and two counts of destruction of property, *id.* § 22–403 (1989 Repl.). He was sentenced to two terms of three-to-nine years on the destruction of property counts and three years-to-life on the involuntary manslaughter while armed charge, all sentences to run concurrently. Appellant contends on appeal (a) that the evidence does not support the "while armed" portion of the involuntary manslaughter conviction and (b) that the trial court erred when it limited the testimony of appellant's expert. We remand to enter a judgment of conviction for involuntary manslaughter and for resentencing.

## I.

Appellant's convictions arise from an incident in which the vehicle he was driving, a Chevrolet Cavalier, left the northbound lane of South Capitol Street, crossed the median, and crashed into a car in the southbound lane. The driver of that car was killed instantly. Two other cars were damaged in the accident. Appellant was found in his car with the back of his seat in a horizontal position. He suffered serious injuries and was taken to a hospital.

A blood test showed that appellant had a blood alcohol content of .152. At trial, appellant testified that he had three beers around 5:30, two more right before he started driving again at about 8:30, and was drinking another beer while he drove. A nurse at the hospital to which he was taken after the accident testified that he had stated to her that he had used alcohol and marijuana about 7:00 that evening. A government expert on accident reconstruction opined that appellant had been driving without lights on, that he had been travelling at a speed greater than 36 miles per hour before he lost control of the car, and the force of the collision caused appellant's

seat-back to collapse. The speed limit at the location of the accident was 25 miles per hour.

Appellant's defense was that, as he looked over his shoulder to change lanes, the seat-back of the car fell back and he lost control of the car. A defense expert in accident reconstruction concluded that the seat mechanism was broken and that the failure had occurred before the crash. He sought to support this conclusion by relying on his own observations of the seat after the accident and a report from General Motors, the manufacturer of the car, to the National Highway Traffic Safety Administrator (NHTSA). The General Motors report contained customer letters to the NHTSA and data from General Motors regarding instances in which the seat-back mechanism had failed. On an *in limine* motion of the government to exclude this report from evidence, the court ruled that the expert could testify that he had utilized the report in reaching his opinion and give a general description of what the report contained but that he could not testify as to the details of the individual instances contained in the report, unless such were put into issue on cross-examination.[1]

On direct examination, appellant's counsel elicited from the expert only that he had read a report from General Motors to the NHTSA regarding the seats. After the government completed its cross-examination of the witness, the court called counsel to the bench and noted the limited inquiry. Appellant's counsel indicated that he intended to have the expert describe certain aspects of the study on redirect. Counsel for the government objected. After much discussion between the court and counsel,

the court ruled that the expert could testify that the report was the basis for his conclusion that the seat mechanism had failed even though he could detect no flaw in the mechanism. When counsel for the government objected that this would compel him to get into individual instances on cross-examination, the court disagreed but held that counsel was free to cross-examine the expert on the facts underlying his conclusion. On redirect, defense counsel asked the expert about the source of his conclusion as to two points. The expert replied that he had relied on the General Motors Report, as well as on his own observations.

The trial court instructed the jury on involuntary manslaughter while armed and on criminal negligence. The court instructed that to find appellant guilty of involuntary manslaughter while armed, the jury had to find that appellant inflicted an injury from which the victim died, that the injury was "the result of a course of conduct involving extreme danger of death or serious bodily injury," that the conduct "amounted to recklessness and was a gross deviation from the standard of conduct that a reasonable person should have observed," and that appellant was armed at the time of the offense. On the element of "while armed," the court instructed

> The fifth element is the element of being armed at the time of the commission of the offense.
>
> Now a dangerous weapon or deadly weapon is one which is likely to produce either death or great bodily injury. And I instruct you that in appropriate circumstances an automobile may be a dangerous weapon. And in determining wheth-

---

1. After determining that the report itself was not admissible, the court stated the extent to which appellant's expert could rely on it:

> The court concludes that Mr. Ring could indeed rely upon [the report] in reaching his opinion. And if the opinion is based upon material in [the report], he may then testify that he did consider an engineering analysis prepared in response to inquiry from the National Highway Traffic Safety Administration.
>
> He would be further permitted to say or tell the jury what is that engineering analysis. But in the court's view he would not be permitted to testify as to [sic] content of that

analysis in terms of the details of the complaint that are contained therein. It appears to this court that he would not be able to say this literature, this study reports Mrs. Jones' experience which is exactly similar to what I saw.

The court based this ruling on her finding that the report was "a bunch of documents which cannot be shown to be substantially similar to the circumstances here and which, if mentioned, will provide a substantial basis for misleading the jury through the expert and will, of course, prolong the trial as we have to attempt to undo that."

er the automobile in this case was a deadly or dangerous weapon, you consider all the circumstances surrounding its possession and use.[2]

## II.

The enhancement of appellant's conviction for involuntary manslaughter as "while armed" under D.C.Code § 22-3202(a) (1989 Repl.), cannot stand. To allow application of the statute (while armed) to a charge of involuntary manslaughter causes an inherent conflict between the two convictions. On these facts, where the "weapon" involved is an automobile, the inappropriateness of enhancement of an involuntary manslaughter conviction as "while armed" is manifest.

Involuntary manslaughter, the underlying crime for which appellant was convicted, is the unintentional killing of another as a result of a noncriminal act which "creates an extreme risk of death or serious bodily injury" or is a misdemeanor committed in such a way that is particularly dangerous to others. *Comber/Hayward v. United States*, 584 A.2d 26, 47-48 (D.C.1990) (en banc). Extreme recklessness, or criminal negligence, is defined as the "lack of awareness or failure to perceive the risk of injury from a course of conduct under circumstances in which the actor should have been aware of the risk." *United States v. Bradford*, 344 A.2d 208, 215 (D.C.1975); *see also Comber, supra* at 47-48; *United States v. Dixon*, 135 U.S.App.D.C. 401, 405-06, 419 F.2d 288, 292-93 (1969) (Leventhal, J., concurring). The essence of involuntary manslaughter, the factor that distinguishes it from other types of homicides, is the defendant's lack of awareness of the risk to others from his conduct when he should have been aware of the risk. *See*

*Comber, supra* at 48-49; *Bradford, supra*, 344 A.2d at 215 n. 22.

D.C.Code § 22-3202(a)(1) (1989 Repl.) provides that:

(a) Any person who commits a crime of violence in the District of Columbia when armed with or having readily available any pistol or other firearm ... or other dangerous or deadly weapon (including a sawed-off shotgun, shotgun, machine-gun, rifle, dirk, bowie knife, butcher knife, switchblade knife, razor, blackjack, billy, or metallic or other false knuckles):

(1) May, if he is convicted for the first time of having so committed a crime of violence in the District of Columbia, be sentenced, in addition to the penalty provided for such crime, to a period of imprisonment which may be up to life imprisonment. ...

Crime of violence is defined in D.C.Code § 22-3201(f) (1989 Repl.) and includes manslaughter.[3] "Dangerous or deadly weapon" is not defined by the statute.

While § 22-3202 includes manslaughter, and there is no question that an automobile can be a dangerous weapon, *see Mitchell v. United States*, 399 A.2d 866, 870 (D.C. 1979) (assault with intent to kill while armed); *Johnson v. United States*, 386 A.2d 710 (D.C.1978) (assault with a dangerous weapon), we conclude that an automobile is not a dangerous weapon for the purposes of the statute when operated with gross negligence (as in involuntary manslaughter.)

While certain objects are weapons by design, for instance, a handgun or a switchblade, other objects become weapons only when there is some general intent for them to be a weapon. For instance, if an individual carries a bat to the baseball field for a

---

**2.** The court's instructions on involuntary manslaughter and the "while armed" element followed Criminal Jury Instructions for the District of Columbia, Nos. 4.03 & 4.26 (3d ed. 1978).

**3.** Only the penalty for manslaughter has been codified. *See* D.C.Code § 22-2405 (1989 Repl.). The elements of manslaughter remain defined by the common law. *Davis v. United States*, 510 A.2d 1051, 1052 n. 1 (D.C.1986). The common

law distinguishes between involuntary and voluntary manslaughter. Involuntary manslaughter is the unintentional killing of another. Voluntary manslaughter is the intentional killing of another, but under circumstances in which the existence of malice is somehow mitigated, as, for example, by the heat of passion or a mistaken belief that self-defense is justified. *United States v. Bradford, supra*, 344 A.2d at 214-15.

game, the bat is certainly not a weapon. However, if the individual should swing the bat purposely at another, the bat then becomes a weapon. Similarly, a car driven for purposes of transportation is not a weapon, but a car driven with the purpose of injuring another definitely is a weapon.

■ In interpreting the phrase "dangerous or deadly weapon," the courts in this jurisdiction, in the context of various statutes using the phrase, have noted this distinction between objects that are inherently "weapons" and those which become weapons only by their manner of use. We construe the law, and believe it only accords with the common meaning of "weapon," to allow enhancement under § 22–3202 in the case of an instrument that is not designed to be a weapon only if it can be inferred from the circumstances that the defendant was aware that his manner of use of the instrument made it an instrument likely to cause injury to others.

In the context of D.C.Code § 22–502 (1989 Repl.), assault with a dangerous weapon, the United States Court of Appeals for the District of Columbia defined weapon as including

> any instrument of offense; anything used, or designed to be used, in attacking an enemy.... An automobile, a rolled up kit of tools, or a pin, is a "weapon" when it is used as one.... "A dangerous weapon is one likely to produce death or great bodily injury."

*Tatum v. United States*, 71 U.S.App.D.C. 393, 394, 110 F.2d 555, 556 (1940) (citations omitted). Similarly, this court has held in the context of D.C.Code § 22–3204 (1989 Repl.), Carrying a Concealed Weapon, that

> A deadly or dangerous weapon is one which is *likely* to produce death or great bodily injury by the use made of it. Such instrument may be dangerous in its ordinary use as contemplated by its design and construction, or where the purpose of carrying the object, under the circumstances, is its use as a weapon.

*Scott v. United States*, 243 A.2d 54, 56 (D.C.1968) (emphasis in original) (citations omitted).

In *Mitchell v. United States, supra,* a case in which the court found that an auto-

mobile used intentionally to run over another was a dangerous or deadly weapon, the court held that "functionally viewed in the context of [the] case, appellant's automobile was a 'dangerous or deadly weapon.'" 399 A.2d at 870. The court there quoted with approval the Michigan Supreme Court.

> The character of a dangerous weapon attaches by adoption when the instrumentality is applied to use against another in furtherance of an assault. When the purpose is evidenced by the act, and the instrumentality is adapted to accomplishment of the assault and capable of inflicting serious injury, then it is when so employed, a dangerous weapon. *People v. Goolsby*, 284 Mich. 375, 378, 279 N.W. 867, 868–69 (1938).

*Id.* In *Parker v. United States*, 123 U.S. App.D.C. 343, 346, 359 F.2d 1009, 1012 (1966), it was held that the government did not need to prove that the defendant used the weapon with the specific intent to injure to convict him of assault with a dangerous weapon.

The most recent case to discuss in similar circumstances what is a dangerous or deadly weapon is *Powell v. United States*, 485 A.2d 596, 601 (D.C.1984), *cert. denied,* 474 U.S. 981, 106 S.Ct. 420, 88 L.Ed.2d 339 (1985). In *Powell,* the defendant ignored a police officer's directions to pull over after the officer had detected him going 82 miles per hour in a 35 mile per hour speed zone. A high speed chase ensued (sometimes 90 miles per hour) in congested traffic, and ended when the defendant speeded up an exit ramp in traffic and rammed into the back end of another car and an occupant of the car was killed. In upholding the convictions for *second-degree murder while armed* and assault with a dangerous weapon, D.C.Code §§ 22–505, –2403, –3202 (1989 Repl.), the court summarized the prior case law:

> A deadly or dangerous weapon is an object "which is *likely* to produce death or great bodily injury by the use made of it." *Scott v. United States*, 243 A.2d 54, 56 (D.C.1968) (emphasis in original) (citations omitted). Thus, an instrument capable of producing death or serious bodily injury by its manner of use qualifies

as a dangerous weapon whether it is used to effect an attack or is handled with reckless disregard for the safety of others. *Parker v. United States*, 123 U.S.App.D.C. 343, 346, 359 F.2d 1009, 1012 (1966).

*Powell, supra*, 485 A.2d at 601.

The government argues that *Powell* must defeat appellant's claim. We disagree. *Powell* did not negate the need for evidence of purpose or intent to have a weapon, but merely applied the holding in *Parker v. United States, supra*, to second-degree murder. In *Powell*, the appellant argued that with a utilitarian object a specific intent to use an object offensively must be shown to enhance a sentence for use of a dangerous or deadly weapon. The court rejected that argument, stating that use of an object with reckless disregard of the risk was sufficient to enhance a conviction under § 22–3202. *Powell, supra*, 485 A.2d at 601.

Reckless disregard of a risk requires an awareness of the risk created and a conscious disregard thereof. However, in the instant case, appellant was charged only with involuntary manslaughter, the killing of another as the result of conduct which created a risk to others that the defendant should have been aware of but was not. Because a car is not designed as a weapon, appellant's conviction can be enhanced only if a jury could infer from the circumstances that appellant was aware that his manner of using the car was likely to result in injuries to others. The charge against appellant, involuntary manslaughter while armed, thus effectively charged both that the defendant was not aware of the risk and that he was aware of the risk. While a jury may be instructed as to separate crimes such that they may find either that a defendant was aware or that he was not

aware, they cannot find and convict on both. That is the case here. The two parts of the charge are contradictory and they cannot stand together.

In reaching our conclusion that appellant's conviction for involuntary manslaughter cannot be enhanced under § 22–3202, we recognize that the discretion to choose under which statute to prosecute is vested in the prosecutor and grand jury. *United States v. Young*, 376 A.2d 809, 812–13 (D.C.1977). This is not a case, however, where the legislature has enacted two statutes with differing penalties, both of which were clearly intended to include appellant's conduct. *See, e.g., United States v. Batchelder*, 442 U.S. 114, 123–24, 99 S.Ct. 2198, 2203–04, 60 L.Ed.2d 755 (1979); *Young, supra*, 376 A.2d at 813. This is a case where the prosecutor, apparently unsatisfied with the penalty the legislature has prescribed for certain conduct, has attempted to increase the penalty for that conduct while avoiding the additional proof necessary to convict appellant of a substantive crime carrying a higher penalty. It is important to understand that if the government believed that appellant's conduct was more culpable than involuntary manslaughter and should be punished with up to a life sentence, the defendant should have been charged accordingly with second-degree murder as in *Powell, supra*, 485 A.2d at 597. The government should have faced up to the more serious, substantive charge if that was its view of the offense committed and then would have been held to the proof of the elements of that crime, as in *Powell*.[4] That is the net effect of our opinion on this issue in this case.[5]

## III.

█ We find no merit to appellant's claim that the trial court's ruling on the

4. The punishment for second-degree murder is life imprisonment or imprisonment for not less than 15 years. *Haney v. United States*, 473 A.2d 393 (D.C.1984).

5. The legislatures of many other states have enacted statutes specifically prescribing the punishment for death or injury resulting from the operation of a vehicle while intoxicated. *See, e.g.*, CAL.PENAL CODE § 367e (West 1970); COLO. REV.STAT. § 18–3–106(1) (1986); CONN.GEN.STAT.

ANN. § 53a–56b (1985); LA.REV.STAT.ANN. § 14:32.1(A)(1) (West 1986); MD.CODE ANN. art. 27, §§ 388 & 388A (1987 Repl.); MASS.GEN.L.ANN. ch. 90, § 24G (West Supp.1989); NEV.REV.STAT. § 484.3795 (1987); N.Y.PENAL CODE § 125.12 (McKinney 1987); 75 PA CONS.STAT.ANN. § 3735 (Purdon Supp.1989); TEX.PENAL CODE ANN. § 19.05 (1989). These statutes vary in the penalties they impose. Some impose a more severe penalty than that for manslaughter, others impose a less severe penalty.

defense expert's testimony as to the NHTSA report violated his right to present a defense and present witnesses. FED.R. EVID. 703 permits an expert to rely on facts or data reasonably relied upon by experts in the particular field, even if such facts and data are otherwise inadmissible.[6] The rule does not state to what extent such facts and data are admissible, but many courts have interpreted the rule to allow admission of otherwise inadmissible facts or data, not as substantive evidence but only for the purpose of evaluating the expert's opinion. *See, e.g., United States v. Wright*, 251 U.S.App.D.C. 276, 285–86, 783 F.2d 1091, 1100–01 (1986) (psychiatrist permitted to testify as to statements of defendant regarding meeting with codefendant); *United States v. Affleck*, 776 F.2d 1451, 1456–58 (10th Cir.1985) (accounting expert permitted to testify as to conversation with other expert since it was part of basis for his opinion); *United States v. Ramos*, 725 F.2d 1322, 1324 (11th Cir.1984); *Bryan v. John Bean Div. of FMC Corp.*, 566 F.2d 541, 545 (5th Cir.1978). Even if admissible under Rule 703, however, the testimony of the facts and data underlying the expert's opinion is subject to exclusion under FED.R. EVID. 403. *See, e.g., Nachtsheim v. Beech Aircraft Corp.*, 847 F.2d 1261, 1271 (7th Cir.1988); *Wright, supra*, 251 U.S.App. D.C. at 286, 783 F.2d at 1101; *Barrel of Fun, Inc. v. State Farm Fire and Casualty Co.*, 739 F.2d 1028, 1033 (5th Cir.1984). Thus, the trial court could properly exclude testimony of the underlying facts of the defense expert's opinion if it found that the probative value of such testimony was substantially outweighed by danger of the testimony misleading the jury and unnecessarily prolonging the trial.

We will not overturn the trial court's evidentiary ruling unless we find that the trial court abused its discretion. *Punch v. United States*, 377 A.2d 1353, 1358 (D.C. 1977), *cert. denied*, 435 U.S. 955, 98 S.Ct. 1586, 55 L.Ed.2d 806 (1978). *See also Gaetano v. United States*, 406 A.2d 1291, 1293 (D.C.1979) (ruling on expert testimony will not be reversed unless it was "manifestly erroneous"). The trial court's limitation on the expert's testimony was narrowly drawn after consideration of the probative value of the testimony and the factors to be balanced against that value under Rule 403.[7] Under these circumstances, we cannot say that the trial court abused its discretion.[8]

We thus vacate appellant's conviction for involuntary manslaughter while armed but remand with instructions to the trial court to enter a judgment of conviction for involuntary manslaughter and to resentence appellant accordingly, and in other respects, we affirm.

Accordingly, the judgment is reversed to the extent directed and the case remanded to the trial court with instructions.

*So ordered.*

---

Some courts have held that the existence of statutes specifically prescribing punishment for injuries or deaths caused while recklessly driving or driving while intoxicated preclude prosecution under more general homicide or assault statutes. *See, e.g., Luster v. State*, 746 P.2d 1159, 1161 (Okla.Crim.App.1987); *State v. Parker*, 198 N.J.Super. 272, 486 A.2d 1275, 1280–81 (Super. Ct.App.Div.1984), *cert. denied*, 99 N.J. 239, 491 A.2d 726 (1985); *People v. Cotton*, 113 Cal. App.3d 294, 304, 169 Cal.Rptr. 814, 820 (1980); *Blackwell v. State*, 34 Md.App. 547, 369 A.2d 153, 158–59 (Ct.Spec.App.1977).

**6.** FED.R.EVID. 703 states:

The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

While this court has not explicitly adopted Rule 703, the rule is consistent with the development of the law in the District of Columbia. *See L.C.D. v. District of Columbia*, 488 A.2d 918, 921 n. 8 (D.C.1985); *accord Clifford v. United States*, 532 A.2d 628 (D.C.1987).

**7.** *See* note 1, *supra*.

**8.** The defendant's inquiry of the expert in respect to the report was more limited than the ruling of the trial court required. The trial court brought this to the attention of the defense counsel and still no deeper inquiry was made. The expert was not prohibited from stating the basis of his opinion by the court's ruling.