Maurice W. **MORRIS**, Appellant,

v.

**UNITED STATES**, Appellee.

No. 91–CF–1067.

District of Columbia Court of Appeals.

Argued Oct. 15, 1993.

Decided Oct. 20, 1994.

William S. Rhyne, McLean, VA, appointed by this court, for appellant.

Douglas F. Gansler, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty. at the time the brief was filed, and John R. Fisher, Roy W. McLeese III, James F. Rutherford, and Margaret R. Batten, Asst. U.S. Attys., Washington, DC, were on the brief, for appellee.

Before TERRY and FARRELL,[*] Associate Judges, and MACK, Senior Judge.

[*] Former *Chief Judge* ROGERS was a member of the division that heard oral argument in this case. After her departure from the court, *Associate Judge* FARRELL was selected by lot to replace her.

FARRELL, Associate Judge:

Appellant pleaded guilty to involuntary manslaughter while armed, D.C.Code §§ 22–2405, –3202 (1989 & 1994 Supp.). The factual basis for the plea, in essence, was that he was "playing with" a loaded pistol in the company of others when it accidentally fired and struck Eric King in the head, killing him. Appellant now contests the enhanced ("while armed") portion of his sentence, contending that under *Reed v. United States*, 584 A.2d 585 (D.C.1990), there is an "inherent conflict," *id.* at 588, between the lack of awareness of risk implicit in involuntary manslaughter [1] and the awareness of risk of harm to others through use of a dangerous weapon required by the "while armed" enhancement provision of D.C.Code § 22–3202(a)(1). Unpersuaded by this contention, we affirm.[2]

### I.

Appellant was charged with, among other things, second-degree murder while armed. At the plea proceeding, where he indicated his desire to plead guilty to involuntary manslaughter while armed, the government proffered facts demonstrating that on August 8, 1989, appellant and his friends were teasing the 16–year–old King, an admitted homosexual. The proffer stated that while appellant and his companions "were attempting to get the decedent to reveal his private parts," appellant pulled out a loaded pistol and "was aiming it at the decedent when the gun went off[,] striking the decedent in the head." Appellant's counsel stated a slightly different version of events: appellant had taken out the pistol and had "not point[ed] it at the decedent specifically[,] but it was positioned and he was just fiddling with it in such a way that it was pointed in the general direction of the decedent" when it discharged. Responding to questions from the court, appellant admitted that he had pulled a gun from his pocket and held it in his hand when it went off, firing a bullet that struck and killed King. He acknowledged, in the court's words, that the death "was a result of a

course of conduct involving extreme danger of death or serious bodily injury," and that he "acted very carelessly and very recklessly." Upon acceptance of his plea, appellant was sentenced to a prison term of ten to thirty years pursuant to the enhancement provision of § 22–3202(a)(1).

### II.

Section 22–3202 provides in relevant part:

(a) Any person who commits a crime of violence, or a dangerous crime[,] in the District of Columbia when armed with or having readily available any pistol or other firearm ... or other dangerous or deadly weapon ...

(1) May ... be sentenced, in addition to the penalty provided for such crime, to a period of imprisonment which may be up to life imprisonment

. . . .

For purposes of this statute, § 22–3201(f) defines a "[c]rime of violence" to include "manslaughter." The statute does not distinguish between kinds of manslaughter—voluntary or involuntary. Indeed, as we explained in *Comber v. United States*, 584 A.2d 26, 37 n. 8 (D.C.1990) (en banc), the statute punishing manslaughter itself draws "no ... distinction between voluntary and involuntary manslaughter in the District of Columbia." *See* D.C.Code § 22–2405 ("[w]hoever commits manslaughter shall be punished ... by imprisonment not exceeding 15 years ..."). Nevertheless, the distinction is ingrained in our law, as *Comber* demonstrated. Involuntary manslaughter, which alone concerns us here, is an "unintentional or accidental killing" committed "[in] the absence of circumstances of justification or excuse...." *Comber*, 584 A.2d at 47–48. It includes "two categories of unintentional killing," roughly labelled "criminal negligence involuntary manslaughter" and "misdemeanor involun-

---

1. That is, in the "criminal negligence" category of involuntary manslaughter. See discussion in text, *infra*.

2. In view of our disposition of the case, we need not consider the government's contention that appellant may not contest his "while armed"

enhancement because he never moved to withdraw his guilty plea. *But see Lorimer v. United States*, 425 A.2d 1306, 1308 (D.C.1981) (court of appeals may address "legality of the sentence imposed" on appeal from conviction based on plea of guilty).

tary manslaughter." The first, which was the basis for appellant's plea of guilty, applies to "one who unintentionally causes the death of another as the result of non-criminal conduct," where that conduct "both creates 'extreme danger to life or of serious bodily injury,' and amounts to 'a gross deviation from a reasonable standard of care.'" *Id.* at 48 (citation omitted). The required mental state for this "involuntary reckless manslaughter," *id.* at 49, as we later pointed out in *Reed, supra,* is "lack of awareness or failure to perceive the risk of injury from a course of conduct under circumstances in which the actor should have been aware of the risk." *Reed,* 584 A.2d at 588 (quoting *United States v. Bradford,* 344 A.2d 208, 215 (D.C.1975)).[3]

Appellant seizes on this "lack of awareness of risk" in arguing that Congress, in enacting § 22–3202, could not have intended to enhance punishment for conduct involving "risks of which a defendant was [un]aware." Correctly pointing out that the purpose of the statute is to deter certain armed crimes, he argues that "[i]t would not serve the purpose of deterrence to punish conduct which was unintended or merely negligent." But this argument meets an obvious difficulty at the outset, which is that Congress, presumptively aware of the common-law bifurcated definition of manslaughter in the District of Columbia, *Comber,* 584 A.2d at 35, nonetheless wrote no such distinction into the enhancement statute, instead employing the unitary term "manslaughter." As used in this statute, the term is not ambiguous any more than it could be said to be ambiguous in § 22–2405, punishing (unarmed) "manslaughter"—without differentiation—by imprisonment for up to fifteen years. We therefore must enforce § 22–3202 according to its plain language, as including manslaughter without

further distinction, unless this is one of the "rare cases" in which "literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 242, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989) (citation and internal quotation marks omitted). *See also Bulls v. United States,* 490 A.2d 197, 200 (D.C.1985). Appellant attempts that demonstration by reliance on *Reed, supra,* but fails.

In *Reed* this court held, in the circumstances there presented, that "[t]he two parts of the charge" of involuntary manslaughter while armed were "contradictory," 584 A.2d at 590, in "inherent conflict" with one another, *id.* at 588, so that the legislature could not have intended § 22–3202 to enhance the defendant's manslaughter conviction. But the court made clear that it was "[o]n these facts" that "the inappropriateness of enhancement of an involuntary manslaughter conviction as 'while armed' is manifest." *Id.* The defendant was charged with involuntary manslaughter of the criminal negligence variety in that he recklessly drove his automobile across a median strip and killed the driver of another car. In concluding "that an automobile is not a dangerous weapon for the purposes of [§ 22–3202(a)(1) ] when operated with gross negligence," the court relied on the established principle that, "[w]hile certain objects are weapons *by design,* for instance, *a handgun* or a switchblade, other objects become weapons only when there is some general intent for them to be a weapon." *Id.* (emphasis added).[4] An automobile, whose normal use is transportation, thus becomes a weapon only when "driven with the purpose of injuring another. . . ." *Id.* at 589. Of course, "a specific intent to use an object offensively" is not required; "use of an object

---

3. The second category involves an accidental killing in the course of commission of a misdemeanor bearing "an inherent danger of physical injury" and where commission of the act itself "entails a reasonably foreseeable risk of appreciable physical injury." *Comber,* 584 A.2d at 50–51 (footnotes omitted).

4. The court looked, for example, to the meaning of a dangerous or deadly weapon under D.C.Code § 22–3204 (carrying a concealed weapon), which our decisions had explained as follows:

A deadly or dangerous weapon is one which is *likely* to produce death or great bodily injury by the use made of it. Such instrument may be dangerous [either] in its ordinary use as contemplated by its design and construction, or where the purpose of carrying the object, under the circumstances, is its use as a weapon.

584 A.2d at 589 (quoting *Scott v. United States,* 243 A.2d 54, 56 (D.C.1968) (emphasis in *Scott* )).

with reckless disregard of the risk [of injury is] sufficient to enhance a conviction under § 22-3202." *Id.* at 590. But, the court reasoned,

> [r]eckless disregard of a risk requires an awareness of the risk created and a conscious disregard thereof. . . . [I]n the instant case, appellant was charged only with involuntary manslaughter, the killing of another as the result of conduct which created a risk to others that the defendant should have been aware of but was not. *Because a car is not designed as a weapon,* appellant's conviction can be enhanced only if a jury could infer from the circumstances that appellant was aware that his manner of using the car was likely to result in injuries to others. The charge against appellant, involuntary manslaughter while armed, thus effectively charged both that the defendant was not aware of the risk and that he was aware of the risk.

*Id.* at 590 (emphasis added).

*Reed* is thus noteworthy both for what it held and for what it did not hold. It plainly did not hold that a loaded firearm was not a dangerous weapon for purposes of § 22-3202 enhancement. *Reed*'s holding turned upon the expansive statutory meaning of dangerous or deadly weapon, which includes objects not "inherently 'weapons'," *id.;* enhancement of an involuntary manslaughter conviction (entailing lack of awareness of risk) is senseless as applied to an object made a weapon only by its purposeful use to injure as defined in *Reed.* At the core of the dangerous weapon category, by contrast, are instruments—like firearms—"designed" as weapons, and as to these *Reed* leaves no doubt that their possession may enhance the punishment for involuntary manslaughter.[5]

The present case illustrates why that must be so. Assuming the government had proven that appellant had no license to carry the pistol, then under *Comber* one can analyze his conduct in "fiddling with" and pointing the loaded gun in two ways: either as noncriminal but reckless conduct bearing an extreme risk of serious bodily injury, or as the commission of an inherently dangerous misdemeanor carrying with it a reasonably foreseeable risk of appreciable physical injury. *See* note 3, *supra.* Viewed either way, there is nothing inherently contradictory or unreasonable in saying that Congress, in § 22-3202, gave notice that unintentional killings resulting from behavior of this sort could receive enhanced punishment precisely because of the heightened risk of such death from playing with a loaded gun in front of others. Application of the statute to appellant's conduct thus serves its deterrent purpose.[6]

*Affirmed.*

MACK, Senior Judge, dissenting:

In 1975, Judge Kelly, joined by Chief Judge Reilly and Judge Gallagher, speaking for this court and quoting the Circuit Court of Appeals[1] reminded us that

> [C]ommon law doctrines are not frozen for criminal cases any more than civil cases, and the courts charged with voicing the common law of the District of Columbia take account of the evolution of common law principles in the light of current perceptions and needs.

*United States v. Bradford,* 344 A.2d 208, 216 (D.C.1975).

Today my colleagues, relying upon the "plain language" of early 1932 congressional legislation[2] which borrows the unitary, undif-

---

5. It need not follow from this analysis that had Reed fortuitously been carrying a firearm at the time he killed the other driver, he could have been punished under § 22-3202. That hypothesis might stretch rational application of the statute—*i.e.,* any link of foreseeable use between the gun and the homicide—to the breaking point. In any event, it is not this case.

6. We decline the invitation to apply principles of lenity to the enhancement of appellant's sentence. Where, as here, Congress, "has conveyed its purpose clearly," courts may not "manufac-

ture ambiguity where none exists." *United States v. Culbert,* 435 U.S. 371, 379, 98 S.Ct. 1112, 1116, 55 L.Ed.2d 349 (1978). *See also Beecham v. United States,* —— U.S. ——, ——, 114 S.Ct. 1669, 1672, 128 L.Ed.2d 383 (1994).

1. *United States v. Schoefield,* 150 U.S.App.D.C. 380, 381, 465 F.2d 560, 561 (footnotes omitted), *cert. denied,* 409 U.S. 881, 93 S.Ct. 210, 34 L.Ed.2d 136 (1972).

2. *See* Act of July 8, 1932, ch. 465, § 1, 47 Stat. 650.

ferentiated description of manslaughter (as ingrained in early English history), reach the conclusion that there is in this jurisdiction such an offense as "involuntary manslaughter while armed," thus permitting an enhancement of sentence when a death follows from the accidental discharge of a gun. *See* D.C.Code §§ 22–3201, –3202 (1993 Supp.).

This "catch all" reference to manslaughter did not define degrees of culpability; rather, it was a word used in indictments in this jurisdiction for over 150 years prior to 1975 when this court carefully defined the distinctions between voluntary and involuntary manslaughter. *See Bradford, supra,* 344 A.2d at 216. To assign a plain meaning that would enhance the punishment for involuntary manslaughter, therefore, is to ignore the teaching of *Bradford,* the authorities and cases cited therein, and other decisions (including our *en banc* decision in *Comber v. United States,* 584 A.2d 26 (D.C.1990)). It would demote the role of "intent" in criminal prosecutions, as well as the concept, from time immemorial, that unintentional offenses generally involve less culpable behavior than intentional offenses and thus warrant less severe punishment than the latter. Moreover, in the factual circumstances of this case, it raises a question of notice to the accused of the consequences, for sentencing purposes, of his entry of a plea of guilty.

## I.

Because in this case an accused has entered a plea of guilty, it is "[a]ppellant's . . . slightly different version of events" to which we apply any controlling law. Essentially his proffer of events disclosed that he, then sixteen years old, together with a group of boys, was teasing the victim, when a loaded pistol which appellant was "fiddling with" inadvertently discharged in the victim's direction, striking him in the head and killing him

instantly. Appellant immediately ran home, informed the police that he had accidentally shot the other boy, and surrendered to the authorities.

The record shows that appellant was indicted for second-degree murder while armed (with possible enhancement),[3] assault with a dangerous weapon,[4] possession of a firearm during the commission of a violent crime,[5] and carrying a pistol without a license.[6] The government's agreement to dismiss all of the charges in the indictment (and not to oppose possible evaluation under the Youth Rehabilitation Act) in return for a plea of guilty to involuntary manslaughter while armed with an operable pistol, led to the entry of the appellant's plea at age seventeen.

Prior to sentencing, appellant filed a declaratory pleading (unopposed by the government) requesting a ruling as to whether involuntary manslaughter while armed was a cognizable offense under District of Columbia law in light of the 1990 cases of *Reed v. United States,* 584 A.2d 585 (D.C.1990), and *Comber, supra.* The trial court ruled that because appellant was in possession of a handgun, an inherently dangerous weapon, *Reed* (involving the death of a victim at the hands of a drunk driver of an automobile) was inapposite, and imposed a sentence, enhanced pursuant to the provisions of D.C.Code § 22–3202, to a term of imprisonment of ten to thirty years. Appellant now challenges the enhanced portion of his sentence.[7]

## II.

Traditionally there is an impending sense of law going awry whenever an undisputed accident leaves one of us facing an enhanced "laundry-list" of criminal charges for an un-

3. D.C.Code §§ 22–2403, –3202 (1989 Repl. & 1994 Supp.)

4. D.C.Code § 22–502 (1989 Repl.).

5. D.C.Code § 22–3204(b) (1994 Supp.).

6. D.C.Code § 22–3204(a) (1994 Supp.).

7. I would reject outright the government's contention that appellant may not contest his sentence because he neither filed a motion to withdraw his plea pursuant to Super.Ct.Crim.R. 32(e) nor a D.C.Code § 23–110 motion to vacate his sentence. We may address the legality of a sentence in the absence of such motions. *Lorimer v. United States,* 425 A.2d 1306, 1308 (D.C.1981). Moreover appellant's timely request for declaratory relief, unopposed by the government, provides an adequate record for determining whether the trial court acted properly in enhancing the sentence.

intentional, albeit stupid, and unfortunate act. An inherent sense of contradiction, if not absurdity, has caused our courts from time immemorial to hypothesize in a struggle to define the measure of punishment appropriate for an act which results in the death of another. I commend to my colleagues, therefore, a re-reading of the historical background of manslaughter as detailed in our *en banc* decision in *Comber, supra*, 584 A.2d at 35–40. *Comber* reminds us that there was no statutory definition of manslaughter in the District of Columbia, and that we have, of course, no ecclesiastical courts to mitigate the harsh effects of punishment for common law homicides. It reminds us that, for the first time in 1975, we explicitly held that voluntary and involuntary manslaughter are legally separate offenses. *Id.* at 37.

Although the distinctions between the legally separate offenses have varied somewhat over the years, *Bradford, supra*, describes voluntary manslaughter as killing with malice—but malice mitigated by the presence of circumstances reducing the degree of criminality. 344 A.2d at 214–15. Involuntary manslaughter, however, is described as a killing without an intent to kill or do bodily injury. "The state of mind in involuntary manslaughter is characterized ... by a lack of intent to cause death or injury ... [or] by a lack of awareness of the consequences of the act amounting to an unreasonable failure of perception [criminal negligence] or the intention to do an act which is a misdemeanor and is in some way dangerous." *Id.* at 215. Stated another way, the elements of involuntary manslaughter are "(1) an unlawful killing of a human being (2) with either (a) the intent to commit a misdemeanor dangerous in itself or (b) an unreasonable failure to perceive the risk of harm to others." *Id.* at 216.

Similarly, *Comber, supra*, confirms that the two legally distinct offenses of manslaughter are distinguishable by virtue of the perpetrator's state of mind. 584 A.2d at 37. While voluntary manslaughter is a lesser included offense of second-degree murder while armed (with which appellant was charged), involuntary manslaughter is not a lesser included offense of voluntary manslaughter.

My colleagues (as well as the trial court), distinguishing *Reed, supra*, 584 A.2d 585, focus on the instrument of death (an automobile as opposed to a gun) rather than the perpetrator's state of mind. Death by gun or automobile is equally as certain. Indeed, it is the "death-oriented mental state [that is] the determinative dividing line between" voluntary and involuntary manslaughter, and which reflects the "differing connotations of culpability." *Comber, supra*, 584 A.2d at 44. For this reason the *Reed* case cannot be distinguished.

Thus, if we focus on the perpetrator's intent and awareness of risk as opposed to the design of an instrument, the holding of *Reed* becomes apparent—i.e., that there is an "inherent conflict" in the application of the "while armed" enhancement provision to an involuntary manslaughter offense. "The essence of involuntary manslaughter, the factor that distinguishes it from other types of homicides, is the defendant's lack of awareness of the risk to others from his conduct when he should have been aware of the risk." *Reed, supra*, 584 A.2d at 588 (citing *Comber, supra*, 584 A.2d at 48–49; *Bradford, supra*, 344 A.2d at 215 n. 22). *Reed* explained the inherent conflict: the charge of involuntary manslaughter while armed "effectively charged both that the defendant was not aware of the risk and that he was aware of the risk.... The two parts of the charge are contradictory and they cannot stand together." *Id.* at 590.

In *Comber, supra*, we held that a voluntary manslaughter instruction which contained, in effect, the classic common law undifferentiated crime of manslaughter was *over inclusive* as it made voluntary manslaughter of all unexcused homicides, including involuntary manslaughter of both the criminal negligence and misdemeanor of manslaughter varieties. 584 A.2d at 26. The same is true of my colleagues' adoption of the classic common law undifferentiated statutory reference of D.C.Code § 22–3201(f) to apply the enhancement provision of D.C.Code § 22–3202 to appellant's conviction for involuntary manslaughter. The factual circumstances of this case clearly support an involuntary manslaughter charge. Appellant's grossly negligent conduct in playing with a loaded hand-

gun among a group of friends tragically resulted in the accidental shooting of the decedent. The trial court found that appellant did not intend to kill or cause serious bodily harm to the decedent, but that his conduct was grossly negligent and extremely dangerous to the physical well-being of others. In my view, the court was right on both counts but wrong in enhancing the sentence.

### III.

When interpreting a criminal statute, the courts must strictly construe the statute in favor of the accused and avoid extending it to cases not covered by the words used. *Edwards v. United States*, 583 A.2d 661, 663 (D.C.1990); *United States v. Resnick*, 299 U.S. 207, 209, 57 S.Ct. 126, 127, 81 L.Ed. 127 (1936).[8] "A defendant may not be subjected to a criminal penalty unless the words of the statute plainly impose it." *Edwards, supra*, 583 A.2d at 663. Involuntary manslaughter is not a lesser included offense of murder. If one "is aware of the risk, the crime is murder and not involuntary manslaughter. If [one] is not aware, [and] implied malice is not a factor, and [one] should have been aware, the crime is involuntary manslaughter." *Bradford, supra*, 344 A.2d at 215 n. 22. In my view, the plain meaning of "manslaughter" as used in early statutory legislation did not contemplate the offense of "involuntary manslaughter" and there is no such offense as "involuntary manslaughter while armed." To apply the enhancement provisions of D.C.Code § 22–3202 to involuntary manslaughter would ignore the evolution of common law principles and have the effect of elevating the crime of involuntary manslaughter to the status of murder.

I would, at a minimum, permit appellant to withdraw his plea of guilty, and if he so desires, have the issues of malice, state of mind, awareness of risk or lack thereof determined at trial.

---

**8.** If one is not aware of the risk and one should not have been aware of it, there is no criminal liability but a situation of pure accident. *Bradford, supra*, 344 A.2d at 214 n. 22 (citing *United States v. Cox*, 166 U.S.App.D.C. 57, 61 & n. 4, 509 F.2d 390, 393–94 & n. 4 (1974) (concurring opinion of Leventhal, J.)).